CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA FILED
12/29/2025

LAURA A. AUSTIN, CLERK
BY:   s/ J. LOPEZ
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

WILLIAM LOWREY, *individually and on behalf of similarly situated individuals,*

        **Plaintiff,**

v.                           **CIVIL ACTION NO.** 6:25CV116

TWILIO INC., OPENAI, L.L.C., and
FRESH START GROUP LLC,

        **Defendants.**

### CLASS ACTION COMPLAINT

      COMES NOW the plaintiff William Lowrey, on behalf of himself and all others similarly situated, by counsel, and for his Class Action Complaint against Defendants Twilio Inc. ("Twilio"), OpenAI, L.L.C. ("OpenAI"), and Fresh Start Group LLC ("Fresh Start") (collectively "Defendants"), he states as follows:

### INTRODUCTION

      1.      In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., ("TCPA"), in response to complaints about abusive telemarketing practices.

      2.      At the time of the TCPA's passage, the majority of illegal robocalls were made "off-line" using pre-recorded voice messages.

      3.      Thereafter, the Federal Communications Commission ("FCC") noted that advertisers seeking to make illegal robocalls increasingly used computer programs to initiate calls as well as SMS text messages, instead of pre-recorded voice messages, to reach cell phone users. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 88 (2016).

4.      A Pew Research Center study conducted almost 10 years ago found that "[t]ext messaging is the most widely-used smartphone feature," and "is also the most frequently-used." Smith, Aaron, *U.S. Smartphone Use in 2015*, Pew Rsch. Center (Apr. 1, 2025), https://www.pewresearch.org/internet/2015/04/01/us-smartphone-use-in-2015/.

5.      Indeed, last year, Americans sent over 2 trillion individual SMS and MMS messages. 2025 Annual Survey Highlights, *CTIA* (Sep. 8, 2025), https://www.ctia.org/news/2025-annual-survey-highlights.

6.      As technology evolved and advertisers adapted to the ways they reached potential customers, the FCC made clear that the TCPA still governed. Specifically, the FCC found that merely moving the process of robo-calling to auto-dialing computer programs, or using automated or pre-recorded text messages instead of a pre-recorded voice, did not place these practices outside the scope of the TCPA. Indeed, the FCC issued a number of declaratory rulings with respect to the TCPA liability of online services that permit the sending of illegal text messages via computer program. *See, e.g.*, *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7978 (2015) ("The TCPA's consent requirement applies to short message service text messages ('SMS' or 'text message') in addition to voice calls.").

7.      Indeed, the TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(13).

8.      Similarly, the Virginia Telephone Privacy Protection (VTPPA), Virginia's state analogue to the TCPA, also prohibits unwanted telemarketing texts. VA. CODE ANN. § 59.1-510 (defining "telephone solicitation call" to include "any text message sent to any wireless telephone").

**The TCPA applies to common carriers that transmit messages others create**

9.      The TCPA does not define the term "make," but the question of who can be held liable for violations of the TCPA was addressed extensively in 2015. *See* 30 FCC Rcd. at 7980 (2015).

10.      The 2015 FCC Order clarifies that one can violate the TCPA either by "taking the steps necessary to physically place a telephone call," or by "being so involved in the placing of a specific telephone call as to be deemed to have initiated it." *Id.* (citing *Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 (2013).

11.      And in making this determination, the adjudicator must "look to the totality of the facts and circumstances surrounding the placing of a particular call." *Id.*

12.      In 2016, the FCC weighed in on the question of whether text broadcasters could be "senders" of text messages under § 227(b)(1) of the TCPA. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 88, 91 (2016). It reiterated that they are.

**Twilio's role as leader in the automated texting industry**

13.      Defendant Twilio is a cloud communications company that enables businesses to reach customers around the globe. In doing so, Twilio essentially bridges the gap between web-based applications and the telephone network. In providing this bridge, however, Defendant has been originating illegal robocall traffic.

14.      Twilio boasts of a large client base of "over 335,000 companies." *Communications APIs with AI and data for SMS, Voice, Email | Twilio*, Twilio, https://www.twilio.com/en-us (last visited (Sep. 29, 2025).

15.      Twilio has been named as a "Leader" in the Communication Platform as a Service market. *2025 Gartner Magic Quadrant for CPaaS*, Twilio, https://www.twilio.com/en-us/report/gartner-mq-cpaas-2025 (last visited Sep. 27, 2025).

16.     For the second quarter of this year, Twilio reported a total revenue of over $1.2 billion and over 349,000 active customer accounts. *Twilio Announces Second Quarter 2025 Results*, Twilio (Aug. 7, 2025), https://www.twilio.com/en-us/press/releases/q2-2025-earnings.

17.     Twilio boasts that over 130 billion messages are sent and received each year over its Customer Engagement Platform, and that in 2023 it sent 4 billion messages in just one week. *SMS Foundations*, Twilio, https://www.twilio.com/docs/messaging/onboarding/sms-foundations (last visited Sep. 27, 2025); *Mass texting*, Twilio, https://www.twilio.com/en-us/use-cases/mass-texting (last visited Sep. 27, 2025).

18.     While Twilio recognizes the ban on unsolicited text messages under federal law, Twilio does not incorporate compliance with this ban in its base offerings, but instead offers optional "add-on" products to supposedly ensure compliance. *What is the Telephone Consumer Protection Act (TCPA)?*, Twilio, https://www.twilio.com/docs/glossary/what-is-telephone-consumer-protection-act-tcpa (last visited Sep. 27, 2025); *Marketplace Add-on Listing Tutorial*, Twilio, https://www.twilio.com/docs/marketplace/listings/tutorial (last visited Sep. 27, 2025).

19.     Twilio has the technical capability to restrict all of its users from sending unwanted telemarketing calls and texts yet chooses not to do so.

20.     Twilio represents that through its "SMS Stop Filtering service," Twilio automatically blocks further texts from being sent to a number. *Update to FCC's SMS Opt Out Keywords*, Twilio (Apr. 9, 2025), https://www.twilio.com/en-us/blog/insights/best-practices/update-to-fcc-s-sms-opt-out-keywords; *Twilio support for opt-out keywords (SMS STOP filtering)*, Twilio, https://help.twilio.com/articles/223134027-Twilio-support-for-opt-out-keywords-SMS-STOP-filtering- (last visited Sep. 27, 2025). As borne out by Mr. Lowrey's experience, this is false as he continued to receive texts after he texted stop.

**Examples of Twilio's direct involvement in text messages it sends through its platform**

21.    Twilio, through its Messaging Service feature, automatically chooses the "optimal" phone number that text messages are sent from. *Messaging Services*, Twilio, https://www.twilio.com/docs/messaging/services (last visited Sep. 27, 2025); *Best Practices for Scaling with Messaging Services*, Twilio, https://www.twilio.com/docs/messaging/guides/best-practices-at-scale (last visited Sep. 27, 2025).

22.    Through its Messaging Service, Twilio also purports to "handle compliance regulations" for messages sent via its platform. *SMS Foundations*, *supra*.

23.    Twilio also controls when text messages are sent, through its message queue and throughput features. *Understanding Twilio Rate Limits and Message Queues*, Twilio https://help.twilio.com/articles/115002943027-Understanding-Twilio-Rate-Limits-and-Message-Queues (last visited Sep. 29, 2025); *Message throughput (MPS) and Trust Scores for A2P 10DLC in the US*, Twilio, https://help.twilio.com/articles/1260803225669-Message-throughput-MPS-and-Trust-Scores-for-A2P-10DLC-in-the-US (last visited Sep. 29, 2025).

24.    Twilio further boasts to its users of how messages can be sent "at a rapid rate," in some cases exceeding over 200 messages per second. *Understanding Twilio Rate Limits and Message Queues, supra*; *Message throughput (MPS) and Trust Scores for A2P 10DLC in the US*, *supra*.

25.    Twilio indeed positions itself as a high-volume, rapid text service that provides "marketing messages . . . at a massive scale" and can send "up to 225 messages per second per campaign." *10DLC (10-digit long code numbers)*, Twilio, https://www.twilio.com/en-us/phone-numbers/a2p-10dlc?tab=1_3 (last visited Oct. 6, 2025).

26.    It is not physically possible for a human to send out messages at such high rates, further underscoring that Twilio is ultimately who sends such text messages.

27.     Through its Content Template Builder, Twilio also will construct and finalize the actual text message that is to be sent, using data points provided by its users. *Send templates created with the Content Template Builder*, Twilio, https://www.twilio.com/docs/content/send-templates-created-with-the-content-template-builder (last visited Sep. 29, 2025).

28.     Twilio also provides a list of message templates that can be sent as marketing texts through its platform. Jesse Sumrak, *31 Promotional Text Message Examples, Templates & Samples*, Twilio (Aug. 2, 2025), https://www.twilio.com/en-us/blog/promotional-text-message-examples.

29.     In fact, Twilio advertises to its customers "Whether you're a developer by trade or don't code at all, Twilio has SMS templates to help you send to your recipients. Powering over 66 billion messages per year, Twilio's SMS API has your back. Sign up today and start building with our text message templates for free!" Jesse Sumrak, *12+ SMS Templates, Examples & Samples for Your Business*, Twilio (Sep. 16, 2025), https://www.twilio.com/en-us/blog/12-sms-templates-examples-to-get-you-started.

30.     Twilio even advises its users how they can make use of AI programs along with Twilio's "CustomerAI technology" and AI Assistants so that users can fully automate the content of the message itself. *How to use generative AI to write SMS copy in seconds*, Twilio, https://www.twilio.com/en-us/blog/insights/ai/use-generative-ai-to-write-sms-copy (last visited Sep. 29, 2025); *Introducing Twilio AI Assistants: a platform to build customer-aware autonomous assistants*, Twilio, https://www.twilio.com/en-us/blog/introducing-twilio-ai-assistants (last visited Sep. 29, 2025); *Twilio To Deliver Customer-Aware Generative AI Through New OpenAI Integratio*n, Twilio, https://www.twilio.com/en-us/press/releases/twilio-to-deliver-customer-aware-generative-ai-through-new-opena (last visited Sep. 29, 2025).

31.     Twilio is further involved in message sent from its platform through its "Messaging Service features that ensure content is correctly encoded, and provide an ideal end-user experience with sticky senders and media fallback." *How Klaviyo helps retail businesses build deep connections with customers*, Twilio, https://customers.twilio.com/en-us/klaviyo (last visited Oct. 6, 2025).

32.     Indeed, an industry trade group, the CTIA, has described Twilio's business model as the following:

> Commercial traffic that resembles [peer-to-peer] traffic in form – sent using ten-digit numbers – but relies on automated systems rather than human beings to generate content.

(Ex. C, Nov. 20, 2015 CTIA Filing with FCC, at 31.)

### Prior investigations into Twilio's noncompliance with the TCPA

33.     In 2012, an industry commentator noted that

> By Twilio allowing SMS spam to be sent through their SMS platform, they're destroying consumer trust in SMS marketing. The more SMS spam consumers receive, the more unlikely they are to engage with SMS apps in the future. This hurts everyone in the industry, even Twilio.
>
> Twilio needs to admit there's an SMS spam problem on their platform, stop glorifying it, and take the needed steps to fix it. If they don't, we're going to continue to see an increase in SMS spam, and a decrease in consumer trust for SMS apps.

Derek Johnson, *Twilio Continues to Send SMS Spam, Even After Lawsuit*, Tatango (Apr 19, 2012)

(archived version accessed via ).

34.     The CTIA has further opined that

> The threat of unwanted or harmful traffic delivered via hybrid business models is real, and Twilio itself has been a conduit for spammers to exploit wireless consumers. Indeed, it is precisely because Twilio and other hybrid providers offer ten digit mass-messaging as an alternative to Short Code program review that they are appealing to bad actors.

(Ex. C, at 5.)

35.     In admonishing Twilio's reckless business model, the CTIA noted:

The company's business model clearly establishes that the higher the volume of traffic Twilio sends, the more profit Twilio generates. With these policies and incentives in place – and no apparent checks against spam – it is no surprise that Twilio has attracted some bad actors in addition to legitimate customers. In February 2014, Cloudmark reported news of "an SMS phishing attack aimed at the customers of several large mobile providers in the US," in which malicious messages were sent through Twilio via traditional P2P mechanisms to "[m]ore than a quarter of a million mobile users." Investigation revealed that more than 90 percent of the numbers involved were provisioned by Twilio. . . .Indeed, one observer asked rhetorically why "spammers love Twilio so much," and then answered: "[I]t's because they use long codes for messaging."

(Ex. C, at 11–12.)

36.     As early as 2017, Twilio has been put on notice that its texting platform is subject to the TCPA and state analogues. *See Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at *4 (W.D. Wash. July 12, 2017).

37.     Twilio has further recognized that it "face[s] a risk of litigation" and

Text messages may subject us to potential risks, including liabilities or claims relating to consumer protection laws. For example, the Telephone Consumer Protection Act of 1991 restricts telemarketing and the use of automatic SMS text messages without proper consent. This has resulted in civil claims against the Company and requests for information through third-party subpoenas. The scope and interpretation of the laws that are or may be applicable to the delivery of text messages are continuously evolving and developing. If we do not comply with these laws or regulations or if we become liable under these laws or regulations due to the failure of our customers to comply with these laws by obtaining proper consent, we could face direct liability.

Twilio Inc., Registration Statement 41 (Form S-1) (Oct. 7, 2016) (available at https://www.sec.gov/Archives/edgar/data/1447669/000119312516733893/d237988ds1.htm).

38.     The Federal Communications Commission ("FCC") investigated Twilio for many months in 2022 and determined that Twilio had been originating illegal robocall traffic on behalf of one or more of its clients. (Ex. A, Jan. 24, 2023 FCC Enforcement Notice Letter.)

39.     When confronted with the investigation's findings, Twilio told the Enforcement Bureau and Industry Traceback Consortium that its client had purportedly obtained the called parties' consent. However, neither Twilio nor its client ever supplied evidence of that consent. (Ex. B, Jan. 24, 2023 FCC Press Release, at 1.)

40.     As a result, the FCC was forced to issue a cease-and-desist letter to Twilio, ordering it to investigate and take steps to address the unlawful traffic. (Ex. A.)

41.     Noting that Twilio was the most prominent and largest provider to receive an Enforcement Bureau cease-and-desist letter, Enforcement Bureau Chief Loyaan A. Egal stated that "'Know Your Customer' principles should be at the forefront of all communications service providers' business practices. It is concerning to see such a large provider allowing this kind of traffic on its networks. I hope and expect Twilio to immediately cease and desist." (Ex. B, at 1.)

42.     In a public statement, representatives from Twilio swiftly responded: "[The company] takes any concerns related to fraudulent actors on its network extremely seriously and will continue to cooperate fully with the Bureau regarding the allegations in the Bureau's Notice." Russel H. Fox and Jonathan P. Garvin, *Telephone and Texting Compliance News: Regulatory Update — FCC Takes Action Against Repeat Robocaller, Legislators Seek Higher Robocalling Penalties, Twilio Stops Illegal Robocallers* (Feb. 28, 2023), https://www.mintz.com/insights-center/viewpoints/2023-02-27-telephone-and-texting-compliance-news-regulatory-update-fcc.

### OpenAI's involvement in robocall space

43.     OpenAI openly professes how its system can be used to fully automate marketing calls to individuals in a community blog post labeled "How I automated cold calls with AI." HenryObj, *How I automated cold calls with AI - Community - OpenAI Developer Community*, OpenAI (Dec. 23, 2024 7:33 am), https://community.openai.com/t/how-i-automated-cold-calls-with-ai/1066243.

44.     In a related video by the same developer, he explains that through OpenAI, he can create a system by which "AI Agents make phone calls on your behalf a bit like having an army of sales development representatives." Henry Obegi, *[DEMO] - Automate Outreach using OpenAI, Twilio, and Google (Sheets/Calendar)*, Vimeo (Dec. 23, 2024 7:13 a.m.), https://vimeo.com/1041701840.

45.     There are similar instructional videos online, including one titled "How to Build an AI Voice Agent That Cold Calls Leads for You" and has 36,000 views to date. Alex Leischow, *How to Build an AI Voice Agent That Cold Calls Leads for You (2025)*, YouTube (May 14, 2025), https://www.youtube.com/watch?v=yKn0qKakUOk.

46.     The description for this video states that it will "show you how to build an AI Outbound Voice Agent, an automated cold caller that reaches out to leads" using OpenAI. *Id.*

47.     Twilio also markets detailed instructions on how to create an outbound AI voice agent using OpenAI who can make such calls. Paul Kamp, How to Make Outgoing Calls with Twilio Voice, the OpenAI Realtime API, and Python, Twilio (Apr. 28, 2025), https://www.twilio.com/en-us/blog/outbound-calls-python-openai-realtime-api-voice.

48.     Glaringly in this tutorial, Twilio admits "[w]orking through exactly who you are allowed to call is beyond the scope of this tutorial." *Id.*

49.     Indeed, OpenAI allows its users to fully automate calls in which OpenAI initiates calls, generates the audio, and interacts with individuals who answer such calls, with zero involvement from its users on such calls.

**Impact on Plaintiff**

50.     This case arises from Defendants' flagrant violation of federal and state law by repeatedly texting Mr. Lowrey despite his registration on the national Do Not Call (DNC) list and further after he instructed Defendants to not contact him. Here, Defendants' failure to abide by

federal and state law caused Mr. Lowrey anxiety, emotional distress, frustration, invasion of privacy, and lost time due to Defendants' ongoing, unwanted solicitation texts.

51.     Both Congress and the Virginia Legislature have taken serious steps toward curbing the unwanted phone calls that plague consumers. Such marketing calls are illegal under either statutory scheme, with Virginia's prohibiting such calls using any method without the called party's consent.

52.     Neither statute permits calling or texting to one whose number is registered on the National Do Not Call List nor who has requested not to receive such communications.

53.     Considering the totality of the circumstances, Plaintiff alleges that Twilio made, initiated, and/or caused to be initiated the text messages transmitted to Plaintiff within the meaning of the TCPA and the VTPPA.

54.     Further, OpenAI made, initiated, and/or caused to be initiated multiple telemarketing calls to Plaintiff within the meaning of the TCPA and the VTPPA.

## JURISDICTION AND VENUE

55.     This Court has subject matter jurisdiction over this action pursuant Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227, 28 U.S.C. § 1331, and *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

56.     Supplemental jurisdiction of the state law claims regarding the same transactions and events is provided under 28 U.S.C. § 1367.

57.     Venue is proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division. Plaintiff is a resident of this District and Division.

## PARTIES

58.     Mr. Lowrey is a natural person, Virginia resident, cellular telephone subscriber, and consumer.

59.     Defendant Twilio Inc. is a foreign corporation, formed in Delaware. It is registered to do business in Virginia. Twilio's registered agent is listed as Corporation Service Company, 100 Shockoe Slip Fl 2, Richmond Va, 23219. Twilio, either by making or causing others to make, telephone solicitation calls, is a Telephone Solicitor as defined by the Virginia Telephone Consumer Protection Act ("VTPPA"), Va. Code § 59.1-510. It is also governed by the federal Telephone Consumer Protection Act ("TCPA").

60.     Defendant OpenAI is a foreign limited liability company, formed in Delaware. It is registered to do business in Virginia. OpenAI's registered agent is listed as 4701 Cox Rd, Ste 285, Glen Allen, VA 23060. OpenAI, either by making or causing others to make, telephone solicitation calls, is a Telephone Solicitor as defined by the Virginia Telephone Consumer Protection Act ("VTPPA"), Va. Code § 59.1-510. It is also governed by the federal Telephone Consumer Protection Act ("TCPA").

61.     Defendant Fresh Start Group LLC is a domestic limited liability company. Fresh Start's registered agent is Moe Mathews, 15430 Pouncey Tract Rd, Rockville, VA 23146. Fresh Start, either by making or causing others to make, telephone solicitation calls, is a Telephone Solicitor as defined by the Virginia Telephone Consumer Protection Act ("VTPPA"), Va. Code § 59.1-510. It is also governed by the federal Telephone Consumer Protection Act ("TCPA").

62.     Fresh Start's principal office is also registered as 15430 Pouncey Tract Rd, Rockville, VA 23146.

63.     Fresh Start owns the property located at 15430 Pouncey Tract Rd, Rockville, VA 23146.

**FACTS**

64.    On or around December 11, 2004, Mr. Lowrey registered his cellular phone number ending in 4102 (the "Phone Number") on the National Do Not Call Registry. He has never changed his cellular phone number, removed it from the list, or relinquished ownership of the number.

65.    Mr. Lowrey uses the Phone Number for residential purposes. His home has no landline telephone.

66.    On March 18, 2025, Mr. Lowrey received a text message from Defendants in which they marketed services to assist with the probate process in Virginia.

67.    Mr. Lowrey never consented to receiving communications from any of Defendants.

68.    This message represented that someone named "Emma, from ProbateCURES" was "reaching out because I noticed you're representing an estate."

69.    In this message, Defendants directed Mr. Lowrey to call them at 423-900-2274.

70.    Neither "ProbateCURES" nor "Probate Cures" is registered with the Virginia State Corporation Commission.

71.    There is a website that is branded as Probate CURES and lists an address of 15430 Pouncey Tract Rd, Rockville, VA 23146. Probate CURES, https://probatecures.com/ (last visited Sep. 29, 2025).

72.    There is a Fresh Start branded Instagram page that links to the Probate CURES website above. *Fresh Start Here (@yourfreshstarthere) • Instagram photos and videos*, Instagram, https://www.instagram.com/yourfreshstarthere/ (last visited Sep. 29, 2025).

73.    Defendants texted Mr. Lowrey using that phone number 601-552-0000 (the "Telemarketing Number").

74.    On March 24, 2025, Mr. Lowrey received another text from Defendants.

75.    That same day, Mr. Lowrey sent a text back to Defendants telling them to stop texting him.

76.    Defendants texted back stating that they understood Mr. Lowrey's request and would stop texting him.

77.    However, Defendants did not stop texting Mr. Lowrey and in fact sent him another text later that same day.

78.    Over the next several days, Mr. Lowrey received an additional six text messages from Defendants.

79.    On March 29, 2024, Mr. Lowrey again texted Defendants to stop texting him.

80.    Defendants once again responded that they understood Mr. Lowrey's request and would stop texting him.

81.    Despite this assurance, Defendants texted Mr. Lowrey again later that day.

82.    Defendants then sent another seventeen text messages to Mr. Lowrey over the next several weeks.

83.    On April 16, 2025, Mr. Lowrey again texted Defendants to stop contacting him.

84.    Defendants ignored this request and continued to send texts to Mr. Lowrey.

85.    Around April 16, 2025, Mr. Lowrey also called Telemarketing Number multiple times to reiterate his request for Defendants to stop contacting him, however each time he called, the phone number rang once and then went to a busy signal.

86.    Mr. Lowrey was confused by who was sending him texts as there was no indication who the Telemarketing Number was associated with.

87.    Defendants sent Mr. Lowrey another fifteen text messages over the next two weeks.

88.    On or around August 14, 2025, Mr. Lowrey received a phone call from Defendants in which they left a voicemail with a pre-recorded message, including the name "Emma" and directing Mr. Lowrey to call them back at 423-900-2274 and stating "I'm reaching out because I noticed you're representing an estate."

89.    On August 14, 2025, Mr. Lowrey called back the number 423-900-2274 multiple times and each time he heard a pre-recorded female voice on the other end that said "That number is not associated with an inbound agent" followed by three rapid beeps and then the call was disconnected.

90.    On or around October 2, 2025, Mr. Lowrey received another call from Defendants in which they left a voicemail with a pre-recorded message, including the name "Emma" and leaving a message similar to the one Mr. Lowrey received on August 14, 2025, including the statement "I'm reaching out because I noticed you're representing an estate" and providing a callback number of 804-636-3337.

91.    When Mr. Lowrey called this number back the same day, a recorded message played stating in part "This is Nadine with FSG." When Mr. Lowrey asked to speak to a representative, another message played stating "All three attempts failed. 429: you've exceeded your current quota. Please check your plan and billing detail. For more information on this error, read the docs. https://platform.openai.com/docs/guides/error-codes/api-errors."

92.    The link provided in this message is to an actual webpage maintained by OpenAI, and on this page, there is an explanation for the error code 429, that explains to OpenAI customers they have run out of credits or hit their maximum "monthly spend." Error Codes, OpenAI, https://platform.openai.com/docs/guides/error-codes/api-errors (last visited Oct. 24, 2025).

93.    FSG, as stated in the recorded message, also is the acronym for Fresh Start Group.

94.    On or around October 16, 2025, Mr. Lowrey received a third telemarketing call from Defendants, using the number 804-636-3337. When Mr. Lowrey answered the call, he heard a message very similar to the message he heard when he called this number on October 12, including the a voice stating "This is Nadine with FSG" and repeated the same error code message.

95.    On or around November 24, 2025, Mr. Lowrey received another call from Defendants in which they left a voicemail with a pre-recorded message, including the name "Emma" and leaving a message similar to the messages Mr. Lowrey received on August 14, 2025 and October 2, 2025, including the statement "I'm reaching out because I noticed you're representing an estate" and providing a callback number of 804-636-3337.

96.    Based on information and belief, there is no person named either Nadine or Emma who is associated with the aforementioned texts and calls that Mr. Lowrey received.

97.    In total, Mr. Lowrey has received approximately 40 unwanted telemarketing text messages from Defendants and at least three unwanted telemarketing phone call.

98.    In or around June 2025, Twilio admitted to Mr. Lowrey that both 601-552-0000 and 423-900-2274 are "Twilio number[s]" that were used through Twilio.

99.    Twilio was thus aware of Mr. Lowrey's repeated requests to stop receiving text messages, yet Twilio continued to send these messages to Mr. Lowrey.

100.    Twilio made these admissions to Mr. Lowrey when he texted a number provided by Twilio to inquire whether the aforementioned phone numbers belonged to Twilio. *See* Paul Kamp, *Is it Twilio Calling?*, Twilio (Apr. 9, 2019), https://www.twilio.com/en-us/blog/lookup-phone-carrier-records-sms-voice#Text-Twilio-to-1-855-747-7626-1-855-747-ROBO.

101.    The aforementioned texts that were sent to Mr. Lowrey were initiated by Fresh Start and sent by Twilio through its SMS platform.

102.    Twilio therefore sent messages as the agent of Fresh Start.

103.    Twilio followed its standard policies and procedures in sending the aforementioned texts to Mr. Lowrey.

104.    Twilio follows these same standard policies and procedures in how it sends out all of its text messages.

105.    Similarly, the aforementioned calls Mr. Lowrey received were initiated by Fresh Start and actually made by OpenAI.

106.    OpenAI followed its standard policies and procedures in making the aforementioned calls to Mr. Lowrey.

107.    OpenAI follows these same standard policies and procedures in how it makes all outbound calls through its platform.

108.    These repeated texts and calls caused Mr. Lowrey anxiety and emotional distress.

109.    Mr. Lowrey expended considerable time and energy to determine who was texting and calling him and get the texts and calls to stop.

110.    Mr. Lowrey's efforts included online research and multiple calls to the phone numbers associated with the messages and calls.

111.    The repeated texts and calls interrupted Mr. Lowrey's life, harassed him, and caused him to unnecessarily expend time dealing with texts he reasonably expected would stop when he repeatedly instructed Defendants to stop contacting him.

112.    Defendants' violations described above were therefore willful.

113.    The TCPA is a long-standing statute, having been enacted in 1991. Defendants have had nearly two decades since each of their beginnings to establish compliant calling procedures.

114.    Defendants have access to the publications of the Federal Government, those of other regulators, trade organizations, and decisions of various courts outlining the TCPA's various protections. This information would permit Defendant adequate information to establish compliance procedures.

115.    Defendants also have access to attorneys to provide advice and interpretations of the TCPA and permit the development compliant procedures.

116.    These same allegations of willful conduct apply to Defendants' failure to abide by the VTPPA in continuing to text Plaintiff.

## CLASS ACTION ALLEGATIONS

117.    The Class's claims all derive directly from a single course of conduct by the Defendants. Defendants Twilio and Open AI have engaged in uniform conduct toward the Class members. They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions among individual Class members. The operative facts on these subjects are the same for all Class members. The same legal standards govern each Claim for Relief asserted by the respective Classes.

118.    Accordingly, Plaintiff bring this lawsuit as a class action on his own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

### The Nationwide Classes

119.    Plaintiff brings this action and seeks to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a nationwide Class (the "**Twilio TCPA DNC Class**") defined as:

All persons (1) residing in the United States, (2) whose cell phone number is registered on the National Do Not Call Registry, (3) who received a telemarketing text sent from Twilio's platform in the last four years from the date of the filing of this complaint, and (4) for whom Twilio does not have record of said person's consent to receive telemarketing messages.

Plaintiff brings this action and seeks to certify and maintain it as a class action under Rules 23(a);

(b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on

behalf of a nationwide Class (the "**Twilio TCPA Stop Contact Class**") defined as:

All persons (1) residing in the United States, (2) who received a text sent from Twilio's platform in the last four years from the date of the filing of this complaint, and (3) prior to receiving such text, such person had sent a text to Twilio to stop contacting them.

Plaintiff brings this action and seeks to certify and maintain it as a class action under Rules 23(a);

(b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on

behalf of a nationwide Class (the "**OpenAI TCPA DNC Class**") defined as:

All persons (1) residing in the United States, (2) whose cell phone number is registered on the National Do Not Call Registry, (3) who received a telemarketing call generated from OpenAI in the last four years from the date of the filing of this complaint, and (4) for whom OpenAI does not have record of said person's consent to receive telemarketing messages.

### The Virginia Classes

120.     Plaintiff brings this action and seeks to certify and maintain it as a class action under

Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own

behalf and on behalf of a state-wide Class (the "**Twilio VTPPA DNC Class**") defined as:

All persons (1) residing in Virginia and/or who have a cell phone number with a Virginia area code, (2) whose cell phone number is registered on the National Do Not Call Registry, (3) who received a text sent from Twilio's platform in the last two years from the date of the filing of this complaint, and (4) for which Twilio does not have record of said person's consent to receive telemarketing messages.

Plaintiff also brings this action and seeks to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a state-wide Class (the "**OpenAI VTPPA DNC Class**") defined as:

> All persons (1) residing in Virginia and/or who have a cell phone number with a Virginia area code, (2) whose cell phone number is registered on the National Do Not Call Registry, (3) who received a call generated from OpenAI in the last two years from the date of the filing of this complaint, and (4) for which OpenAI does not have record of said person's consent to receive telemarketing messages.

Plaintiff also brings this action and seeks to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a state-wide Class (the "**Twilio VTPPA Stop Contact Class**") defined as:

> All persons (1) residing in Virginia and/or who have a cell phone number with a Virginia area code, (2) received a text sent from Twilio's platform in the last two years from the date of the filing of this complaint, and (3) prior to receiving such text, such person had sent a text to Twilio indicating they wanted no further communications from Twilio.

Plaintiff also brings this action and seeks to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a state-wide Class (the "**Twilio VTPPA Misleading Number Class**") defined as:

> All persons (1) residing in Virginia and/or who have a cell phone number with a Virginia area code, (2) received a text sent from Twilio's platform in the last two years from the date of the filing of this complaint, and (3) such number that the text was sent from is not an official contact number for Twilio.

Plaintiff also brings this action and seeks to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a state-wide Class (the "**OpenAI VTPPA Misleading Name Class**") defined as:

> All persons (1) residing in Virginia and/or who have a cell phone number with a Virginia area code, (2) received a call involving OpenAI in the last two years from the date of the filing of this complaint, and (3) in such call OpenAI did not identify itself as the entity making the call.

121.    The Twilio TCPA DNC Class, the OpenAI TCPA DNC Class, the Twilio TCPA Stop Contact Class, the Twilio VTPPA DNC Class, the OpenAI VTPPA DNC Class, the Twilio VTPPA Stop Contact Class, the Twilio VTPPA Misleading Number Class, and the OpenAI VTPPA Misleading Name Class are collectively referred to as the Classes.

122.    Excluded from the Classes are Defendants, their affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judge who may preside over the case.

123.    This action has been brought and may properly be maintained on behalf of Classes proposed above under Federal Rule of Civil Procedure Rule 23.

124.    **Numerosity**. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Upon information and belief, Defendants Twilio and OpenAI sent or made such illegal telemarketing messages to millions of individuals in the United States and the Commonwealth of Virginia. These individuals are geographically dispersed across the nation and commonwealth, making joinder of all Class members impracticable.

125.    Each of the Classes is ascertainable because its members can be readily identified using phone recipient records and other information kept by Defendants or third parties in the usual course of business and within their custody or control. Plaintiffs anticipate providing appropriate notice to each certified Class in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

126.    **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes. The total focus of the litigation will be Defendants Twilio's and OpenAI's uniform conduct, processes and procedures; whether

Defendants Twilio and OpenAI sent telemarketing texts and/or calls to numbers on the national DNC list without consent; whether Defendant Twilio sent telemarketing texts after being told not to do so; whether Defendant Twilio sent telemarketing texts from misleading numbers; whether Defendants Twilio and OpenAI maintain internal Do Not Call Lists; and whether Defendants Twilio and OpenAI willfully took such actions.

127.     **Typicality**. Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendants Twilio and OpenAI use the same standard policies and procedures in how they send out texts and calls, committing the conduct that Plaintiff alleges damaged him and the Classes. Plaintiff is entitled to relief under the same causes of action as the other members of the Classes. Defendants Twilio and OpenAI uniformly breached multiple laws and duties by engaging in the conduct described above, and these violations had the same effect on each member of the Classes.

128.     **Adequacy**. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained Counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex class actions across the country, including repeatedly in federal court in Virginia.

129.     **Superiority**. Questions of law and fact common to the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each Class Member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants Twilio's and OpenAI's conduct. It would be virtually impossible for the members of the Class to, individually, effectively redress the

class-wide wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

130.      Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants Twilio's and OpenAI's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

131.      There are no known unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions. Because Class Members in each Class that Plaintiff seeks to represent may be unaware that their rights have been violated or, if aware, would be unable to litigate their claims on an individual basis because of their relatively small damages, a class action is the only practical proceeding available. To Plaintiff's knowledge, no other similar actions are pending against Defendants Twilio and OpenAI. This forum is appropriate for litigation because Defendant Twilio and OpenAI conduct business in this District and the conduct complained-of herein occurred here.

**COUNT ONE:**
**Unauthorized Telemarketing Texts and Calls to Phone Numbers on National DNC List**
**in Violation of the Telephone Consumer Protection Act**
**47 U.S.C. § 227**
**Class Claim Against Defendants Twilio and OpenAI**

132.      Mr. Lowrey realleges and incorporates all other factual allegations set forth in this Complaint.

133.     Mr. Lowrey brings this Count against Defendant Twilio on behalf of members of the Twilio TCPA DNC Class and against Defendant OpenAI on behalf of the OpenAI TCPA DNC Class.

134.     Defendant Twilio sent or caused to be sent repeated telemarketing texts to Mr. Lowrey's residential phone and the phone numbers of members of the Twilio TCPA DNC Class despite Mr. Lowrey and members of the Twilio TCPA DNC Class having registered their numbers on the National Do Not Call List.

135.     Twilio did not receive any authorization or consent to send these texts.

136.     These repeated texts were made without Mr. Lowrey's authorization and disregarded Mr. Lowrey's designation of the Phone Number on the National Do Not Call List and were thus a violation of 47 C.F.R. § 64.1200(c)(2).

137.     The violations of these regulations also constituted violations of the TCPA. 47 U.S.C. § 227(c)(5).

138.     Defendant OpenAI made or caused to be made repeated telemarketing calls to Mr. Lowrey's residential phone and the phone numbers of members of the OpenAI TCPA DNC Class despite Mr. Lowrey and members of the OpenAI TCPA DNC Class having registered their numbers on the National Do Not Call List.

139.     OpenAI did not receive any authorization or consent to make these calls.

140.     These repeated calls were made without Mr. Lowrey's authorization and disregarded Mr. Lowrey's designation of the Phone Number on the National Do Not Call List and were thus a violation of 47 C.F.R. § 64.1200(c)(2).

141.     The violations of these regulations also constituted violations of the TCPA. 47 U.S.C. § 227(c)(5).

142.     Defendants Twilio and OpenAI willfully and/or knowingly violated these regulations.

143.     As a result of repeated unwanted telemarketing texts and calls, Mr. Lowrey suffered actual damages including frustration, anger, stress, invasion of privacy, annoyance, loss of time, and other emotional and mental distress. He was also forced to spend time and resources to try to stop Defendants from contacting him. Members of the Twilio TCPA DNC Class and members of the OpenAI TCPA DNC Class suffered similar damages.

144.     As a result, Mr. Lowrey, members of the Twilio TCPA DNC Class, and members of the OpenAI TCPA DNC Class are entitled to recover $1,500 in statutory damages for each communication in violation of the TCPA or three times their actual damages, whichever is greater. 47 U.S.C. § 227(c)(5).

145.     In the alternative, if such violations are found to not be willful, Mr. Lowrey, members of the Twilio TCPA DNC Class, and members of the OpenAI TCPA DNC Class are entitled to recover $500 in statutory damages for each communication in violation of the TCPA or their actual damages, whichever is greater. 47 U.S.C. § 227(c)(5).

146.     Mr. Lowrey, on behalf of himself and members of the aforementioned class(es) in this Count, also seeks an injunction against Defendants Twilio and OpenAI for each to establish additional policies and procedures to prevent the aforementioned violations in this Count from occurring in the future.

**COUNT TWO:**
**Continued Telemarketing Texts After Notification to Stop**
**in Violation of the Telephone Consumer Protection Act**
**47 U.S.C. § 227**
**Class Claim Against Defendant Twilio**

147.     Mr. Lowrey realleges and incorporates all other factual allegations set forth in this Complaint.

148.     Mr. Lowrey brings this Count against Defendant Twilio on behalf of members of the Twilio TCPA Stop Contact Class.

149.     Defendant Twilio repeatedly made telemarketing texts to Mr. Lowrey after he informed Defendant Twilio, unequivocally, to stop contacting him on his residential phone. Twilio similarly sent such texts to members of the Twilio TCPA Stop Contact Class after such individuals had already told Twilio to stop sending such texts to them.

150.     Defendant Twilio initiated these repeated texts without instituting procedures to maintain a do not call list in violation of 47 C.F.R. § 64.1200(d).

151.     The violations of these regulations also constituted violations of the TCPA. 47 U.S.C. § 227(c)(5).

152.     Defendant Twilio willfully and/or knowingly violated these regulations.

153.     As a result of repeated unwanted telemarketing calls, Mr. Lowrey suffered actual damages including frustration, anger, stress, invasion of privacy, annoyance, loss of time, and other emotional and mental distress. He was also forced to spend time and resources to try to stop Defendants from contacting him. Members of the Twilio TCPA Stop Contact Class suffered similar damages.

154.     As a result, Mr. Lowrey and members of the Twilio TCPA Stop Contact Class are entitled to recover $1,500 in statutory damages for each communication in violation of the TCPA or three times his actual damages, whichever is greater. 47 U.S.C. § 227(c)(5).

155.     In the alternative, if such violations are found to not be willful, Mr. Lowrey members of the Twilio TCPA Stop Contact Class are entitled to recover $500 in statutory damages

for each communication in violation of the TCPA or his actual damages, whichever is greater. 47 U.S.C. § 227(c)(5).

156.    Mr. Lowrey, on behalf of himself and members of the aforementioned class(es) in this Count, also seeks an injunction against Defendant Twilio to establish additional policies and procedures to prevent the aforementioned violations in this Count from occurring in the future.

**COUNT THREE:**
**Unauthorized Telemarketing Texts to Phone Numbers on National DNC List**
**in Violation of Virginia Telephone Privacy Protection Act**
**VA. CODE ANN. § 59.1-514(B)**
**Class Claim against Twilio and OpenAI**

157.    Mr. Lowrey realleges and incorporates all other factual allegations set forth in this Complaint.

158.    Mr. Lowrey brings this Count against Defendant Twilio on behalf of members of the Twilio VTPPA DNC Class and against Defendant OpenAI on behalf of the OpenAI VTPPA DNC Class.

159.    Defendant Twilio sent or caused to be sent repeated telemarketing texts to Mr. Lowrey's residential phone and the phone numbers of members of the Twilio VTPPA DNC Class despite Mr. Lowrey and members of the Twilio VTPPA DNC Class having registered their numbers on the National Do Not Call List.

160.    Such texts were telephone solicitations calls under the VTPPA. VA. CODE ANN. § 59.1-510.

161.    Such texts were in violation of the VTPPA's prohibition on initiating or causing to be initiated telephone solicitation calls to telephone numbers on the National Do Not Call Registry. VA. CODE ANN. § 59.1-514(B).

162.    Defendant OpenAI sent or caused to be sent repeated telemarketing calls to Mr. Lowrey's residential phone and the phone numbers of members of the OpenAI VTPPA DNC Class despite Mr. Lowrey and members of the OpenAI VTPPA DNC Class having registered their numbers on the National Do Not Call List.

163.    Such calls were telephone solicitations calls under the VTPPA. VA. CODE ANN. § 59.1-510.

164.    Such calls were in violation of the VTPPA's prohibition on initiating or causing to be initiated telephone solicitation calls to telephone numbers on the National Do Not Call Registry. VA. CODE ANN. § 59.1-514(B).

165.    As a result of these repeated unwanted telemarketing calls, Mr. Lowrey suffered actual damages including frustration, anger, stress, invasion of privacy, annoyance, loss of time, and other emotional and mental distress. He was also forced to spend time and resources to try to stop Defendants from contacting him. Members of the Twilio VTPPA DNC Class and members of the OpenAI VTPPA DNC Class suffered similar damages.

166.    As a result, Mr. Lowrey, members of the Twilio VTPPA DNC Class, and members of the OpenAI VTPPA DNC Class are each entitled to recover $5,000 in statutory damages for each communication in violation of the VTPPA, as well as reasonable attorney's fees and costs. VA. CODE ANN. § 59.1-515.

167.    In the alternative, if such violations are found to not be willful, Mr. Lowrey, members of the Twilio VTPPA DNC Class, and members of the OpenAI VTPPA DNC Class are each entitled to recover $500 for the first violation, $1,000 for the second violation and $5,00 for each subsequent violation.

168.      Mr. Lowrey, members of the Twilio VTPPA DNC Class, and members of the OpenAI VTPPA DNC Class are also entitled to reasonable attorney fees and court costs. VA. CODE ANN. § 59.1-515(C).

169.      Defendants are jointly and severally liable for violations of the VTPPA in making and/or initiating the aforementioned texts and calls to be sent to Mr. Lowrey's phone. VA. CODE ANN. § 59.1-514.1(A).

170.      Mr. Lowrey, on behalf of himself and members of the aforementioned class(es) in this Count, also seeks an injunction against Defendants Twilio and OpenAI for each to establish additional policies and procedures to prevent the aforementioned violations in this Count from occurring in the future.

**COUNT FOUR:**
**Continued Telemarketing Texts After Notification to Stop**
**in Violation of Virginia Telephone Privacy Protection Act**
**VA. CODE ANN. §§ 59.1-513(A), 59.1-514(A)**
**Class Claim against Twilio**

171.      Mr. Lowrey realleges and incorporates all other factual allegations set forth in this Complaint.

172.      Mr. Lowrey brings this Count against Defendant Twilio on behalf of members of the VTPPA Stop Contact Class.

173.      Defendant Twilio sent or caused to be sent made telemarketing texts to Mr. Lowrey after he informed Defendant Twilio, unequivocally, to stop contacting him on his residential phone. Twilio similarly sent such texts to members of the Twilio TCPA Stop Contact Class after such individuals had already told Twilio to stop sending such texts to them.

174.      Such texts were telephone solicitations calls under the VTPPA. VA. CODE ANN. § 59.1-510.

175.     Such texts were in violation of the VTPPA's prohibition on initiating or causing to be initiated telephone solicitation calls to telephone numbers where a person at said number has previously stated he does not wish to receive further solicitations. VA. CODE ANN. § 59.1-514(A).

176.     Such texts were further in violation of the VTPPA as the number such texts were transmitted on did not permit an individual to make a request to not receive such further communications. VA. CODE. ANN. § 59.1-513(A).

177.     In sending or causing to send such texts, Defendant Twilio willfully violated the VTPPA.

178.     As a result of repeated unwanted telemarketing calls, Mr. Lowrey suffered actual damages including frustration, anger, stress, invasion of privacy, annoyance, loss of time, and other emotional and mental distress. He was also forced to spend time and resources to try to stop Defendants from contacting him. Members of the Twilio VTPPA Stop Contact Class suffered similar damages.

179.     As a result, Mr. Lowrey and members of the Twilio VTPPA Stop Contact Class are each entitled to recover $5,000 in statutory damages for each communication in violation of the VTPPA, as well as reasonable attorney's fees and costs. VA. CODE ANN. § 59.1-515.

180.     In the alternative, if such violations are found to not be willful, Mr. Lowrey and members of the Twilio VTPPA Stop Contact Class are each entitled to recover $500 for the first violation, $1,000 for the second violation and $5,00 for each subsequent violation.

181.     Mr. Lowrey and members of the Twilio VTPPA Stop Contact Class are also entitled to reasonable attorney fees and court costs. VA. CODE ANN. § 59.1-515(C).

182.     Defendants are jointly and severally liable for violations of the VTPPA in making and/or initiating the aforementioned texts to be sent to Mr. Lowrey's phone. VA. CODE ANN. § 59.1-514.1(A).

183.     Mr. Lowrey, on behalf of himself and members of the aforementioned class(es) in this Count, also seeks an injunction against Defendant Twilio to establish additional policies and procedures to prevent the aforementioned violations in this Count from occurring in the future.

**COUNT FIVE:**
**Misleading Caller Identification Information in Texts**
**in Violation of Virginia Telephone Privacy Protection Act**
**VA. CODE ANN. § 59.1-513(B)**
**Class Claim against Twilio**

184.     Mr. Lowrey realleges and incorporates all other factual allegations set forth in this Complaint.

185.     Mr. Lowrey brings this Count against Defendant Twilio on behalf of members of the Twilio VTPPA Misleading Number Class.

186.     Defendant Twilio sent or caused to be sent made telemarketing texts to Mr. Lowrey where it used a number not officially listed as belonging to Twilio. Twilio similarly sent such texts to members of the Twilio VTPPA Misleading Number Class.

187.     Such texts were telephone solicitations calls under the VTPPA. VA. CODE ANN. § 59.1-510.

188.     The use of a telephone number that is not officially listed with Twilio caused confusion to Mr. Lowrey as well as members of the Twilio VTPPA Misleading Number Class as they did not know who was contacting them.

189.     Further, without knowing the identity of who was sending such messages, Mr. Lowrey and members of the Twilio VTPPA Misleading Number Class were unable to take steps to stop such unwanted communications from occurring.

190.     Such texts were thus in violation of the VTPPA's prohibitions against (1) taking any intentional action to prevent the transmission of the telephone solicitor's name or telephone number in sending telephone solicitations and (2) any conduct that results in the display of false or misleading called identification information in sending telephone solicitations.

191.     In sending or causing to send such texts, Defendant Twilio willfully violated the VTPPA.

192.     As a result of these misleading telemarketing texts, Mr. Lowrey suffered actual damages including frustration, anger, stress, invasion of privacy, annoyance, confusion, loss of time, and other emotional and mental distress. He was also forced to spend time and resources to try determining who was contacting him. Members of the Twilio VTPPA Misleading Number Class suffered similar damages.

193.     As a result, Mr. Lowrey and members of the Twilio VTPPA Misleading Number Class are each entitled to recover $5,000 in statutory damages for each communication in violation of the VTPPA, as well as reasonable attorney's fees and costs. VA. CODE ANN. § 59.1-515.

194.     In the alternative, if such violations are found to not be willful, Mr. Lowrey and members of the Twilio VTPPA Misleading Number Class are each entitled to recover $500 for the first violation, $1,000 for the second violation and $5,00 for each subsequent violation.

195.     Mr. Lowrey and members of the Twilio VTPPA Misleading Number Class are also entitled to reasonable attorney fees and court costs. VA. CODE ANN. § 59.1-515(C).

196.     Defendants are jointly and severally liable for violations of the VTPPA in making and/or initiating the aforementioned texts to be sent to Mr. Lowrey's phone. VA. CODE ANN. § 59.1-514.1(A).

197.     Mr. Lowrey, on behalf of himself and members of the aforementioned class(es) in this Count, also seeks an injunction against Defendant Twilio to establish additional policies and procedures to prevent the aforementioned violations in this Count from occurring in the future.

## COUNT SIX:
### Misleading Caller Identification Information in Texts
### in Violation of Virginia Telephone Privacy Protection Act
### VA. CODE ANN. § 59.1-512
### Class Claim against OpenAI

198.     Mr. Lowrey realleges and incorporates all other factual allegations set forth in this Complaint.

199.     Mr. Lowrey brings this Count against Defendant OpenAI on behalf of members of the OpenAI VTPPA Misleading Name Class.

200.     Defendant OpenAI sent or caused to be sent telemarketing calls to Mr. Lowrey where it failed to identify itself. Open AI similarly sent such calls to members of the OpenAI VTPPA Misleading Name Class.

201.     These calls caused confusion to Mr. Lowrey as well as members of the OpenAI VTPPA Misleading Name Class as they did not know who was contacting them.

202.     Further, without knowing the identity of who was making such calls, Mr. Lowrey and members of the OpenAI VTPPA Misleading Name Class were unable to take steps to stop such unwanted communications from occurring.

203.     Such calls were thus in violation of the VTPPA's requirement that a telephone solicitor who makes a telephone solicitation call shall identify himself by his first and last names.

204.      In making or causing such calls to be made, Defendant OpenAI willfully violated the VTPPA.

205.      As a result of these misleading telemarketing calls, Mr. Lowrey suffered actual damages including frustration, anger, stress, invasion of privacy, annoyance, confusion, loss of time, and other emotional and mental distress. He was also forced to spend time and resources to try determining who was contacting him. Members of the OpenAI VTPPA Misleading Name Class suffered similar damages.

206.      As a result, Mr. Lowrey and members of the OpenAI VTPPA Misleading Name Class are each entitled to recover $5,000 in statutory damages for each communication in violation of the VTPPA, as well as reasonable attorney's fees and costs. VA. CODE ANN. § 59.1-515.

207.      In the alternative, if such violations are found to not be willful, Mr. Lowrey and members of the OpenAI VTPPA Misleading Name Class are each entitled to recover $500 for the first violation, $1,000 for the second violation and $5,00 for each subsequent violation.

208.      Mr. Lowrey and members of the OpenAI VTPPA Misleading Name Class are also entitled to reasonable attorney fees and court costs. VA. CODE ANN. § 59.1-515(C).

209.      Defendants are jointly and severally liable for violations of the VTPPA in making and/or initiating the aforementioned calls to be sent to Mr. Lowrey's phone. VA. CODE ANN. § 59.1-514.1(A).

210.      Mr. Lowrey, on behalf of himself and members of the aforementioned class(es) in this Count, also seeks an injunction against Defendants OpenAI to establish additional policies and procedures to prevent the aforementioned violations in this Count from occurring in the future.

**COUNT SEVEN:**
**Repeated Unwanted Telemarketing Calls**
**in Violation of the Telephone Consumer Protection Act**

**47 U.S.C. § 227**
**Individual Claim Against Defendant Fresh Start**

211.        Mr. Lowrey realleges and incorporates all other factual allegations set forth in this

Complaint.

212.        Defendant Fresh Start initiated repeated telemarketing texts to Mr. Lowrey's

residential phone despite Mr. Lowrey having registered the number on the National Do Not Call

List.

213.        Defendant Fresh Start further repeatedly made telemarketing texts to Mr. Lowrey

after he informed Defendant Fresh Start, unequivocally, to stop contacting him on his residential

phone.

214.        Defendant Fresh Start initiated these repeated texts without instituting procedures

to maintain a do not call list in violation of 47 C.F.R. § 64.1200(d).

215.        These repeated texts were made without Mr. Lowrey's authorization and

disregarded Mr. Lowrey's designation of the Phone Number on the National Do Not Call List and

were thus a violation of 47 C.F.R. § 64.1200(c)(2).

216.        The violations of these regulations also constituted violations of the TCPA. 47

U.S.C. § 227(c)(5).

217.        Defendant Fresh Start willfully and/or knowingly violated these regulations.

218.        As a result of repeated unwanted telemarketing calls, Mr. Lowrey suffered actual

damages including frustration, anger, stress, invasion of privacy, annoyance, loss of time, and other

emotional and mental distress. He was also forced to spend time and resources to try to stop

Defendants from contacting him.

219.     As a result, Mr. Lowrey is entitled to recover $1,500 in statutory damages for each communication in violation of the TCPA or three times his actual damages, whichever is greater. 47 U.S.C. § 227(c)(5).

220.     In the alternative, if such violations are found to not be willful, Mr. Lowrey is entitled to recover $500 in statutory damages for each communication in violation of the TCPA or his actual damages, whichever is greater. 47 U.S.C. § 227(c)(5).

221.     Each of the Defendants is jointly and severally liable to Mr. Lowrey for the above damages.

## COUNT EIGHT:
### Repeated Unwanted Telephone Solicitation Calls
### in Violation of Virginia Telephone Privacy Protection Act
### VA. CODE ANN. § 59.1-514
### Individual Claim against Fresh Start

222.     Mr. Lowrey realleges and incorporates all other factual allegations set forth in this Complaint.

223.     Defendant Fresh Start repeatedly made telephone solicitation texts to Mr. Lowrey after he informed Defendant Fresh Start to stop contacting him.

224.     Defendant Fresh Start also repeatedly made telephone solicitation texts to Mr. Lowrey's residential phone after he registered it on the National Do Not Call List.

225.     This repeated unwanted telephone solicitation calls were violations of the VTPPA. VA. CODE ANN. § 59.1-514(A), (B).

226.     In causing such texts to be sent, Defendant Fresh Start willfully violated the VTPPA.

227.     Defendants are jointly and severally liable for violations of the VTPPA in making and/or initiating the aforementioned texts to be sent to Mr. Lowrey's phone. VA. CODE ANN. § 59.1-514.1(A).

228.     As a result of these unwanted telephone solicitation calls, Mr. Lowrey suffered actual damages including frustration, anger, stress, and other emotional and mental distress. He was also forced to spend time and resources to try to stop Defendants from contacting him.

229.     As a result, Mr. Lowrey is entitled to recover $5,000 in statutory damages for each communication in violation of the VTPPA, as well as reasonable attorney's fees and costs. VA. CODE ANN. § 59.1-515.

230.     In the alternative, if such violations are found to not be willful, Mr. Lowrey is entitled to recover $500 for the first violation, $1,000 for the second violation and $5,00 for each subsequent violation.

231.     Mr. Lowrey is also entitled to reasonable attorney fees and court costs. VA. CODE ANN. § 59.1-515(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Classes respectfully prays that this Court:

232.     Certify the each of the Classes under Rule 23 of the Federal Rules of Civil Procedure;

233.     Find Defendants jointly and severally liable for violations of the VTPPA and TCPA;

234.     Award actual and statutory damages as pled;

235.     Award attorneys' fees and costs under the VTPPA as pled;

236.     Award pre-judgment and post-judgment interest to Mr. Lowrey and members of the Classes;

237.     Issue injunctions against Defendants Twilio and OpenAI as pled; and

238.    Award such other relief, including equitable relief, as the Court deems just and appropriate.

**TRIAL BY JURY IS DEMANDED**

Respectfully Submitted,

**WILLIAM LOWREY,**

By:  /s/ *Kevin Dillon*

Kevin A. Dillon (VSB # 93475)
VOICE FOR JUSTICE LAW, PLLC
626 E. Broad Street, Suite 300
Richmond, VA 23219
Telephone: 804-277-9441
Facsimile: 804-494-4985
Email: kevin@clalegal.com

Craig C. Marchiando (VSB # 89736)
CONSUMER LITIGATION ASSOCIATES, PC
763 J. Clyde Morris Blvd, #1a
Newport News, VA 23601
Telephone: 757-930-3660
Facsimile: 757-930-3662
Email: craig@clalegal.com

*Counsel for Plaintiff*