**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| WILLIAM LOWREY,<br><br>Plaintiff,<br><br>v.<br><br>TWILIO INC., OPENAI, L.L.C., and FRESH START GROUP LLC,<br><br>Defendants. | Civil Action No. 6:25-cv-116-NKM |

**REBUTTAL BRIEF IN SUPPORT OF OAI INTERNATIONAL, INC.'S (F/K/A OPENAI, LLC) MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 3

- I. Plaintiff's Brief Confirms He Does Not Plausibly Allege OpenAI Violated The TCPA. ........ 3
  - A. Plaintiff's Brief Confirms Counts One, Nine, And Ten Against OpenAI Must Be Dismissed Because Plaintiff Does Not Plausibly Allege OpenAI "Made" Or "Initiated" Any Calls. ........ 4
  - B. Plaintiff's Brief Confirms Count One Against OpenAI Must Be Dismissed Because Plaintiff Does Not Plausibly Allege That He Is A "Residential Telephone Subscriber." ........ 21
  - C. Plaintiff's Brief Confirms Counts Nine And Ten Against OpenAI Must Be Dismissed Because Plaintiff Lacks A Cause Of Action. ........ 25
  - D. Plaintiff's Brief Confirms Counts One And Ten Against OpenAI Must Be Dismissed Because Plaintiff Does Not Plausibly Allege A "Telephone Solicitation" Or "Telemarketing." ........ 25
- II. Plaintiff's Brief Confirms He Does Not Plausibly Allege OpenAI Violated The VTPPA. ........ 27
  - A. Plaintiff's Brief Confirms The Court Should Decline Supplemental Jurisdiction Over Plaintiff's State-Law Claims. ........ 27
  - B. Plaintiff's Brief Confirms He Does Not Plausibly Allege OpenAI "Made," "Initiated," Or "Caused To Be Initiated" Any Calls. ........ 29
  - C. Plaintiff's Brief Confirms He Does Not Plausibly Allege A "Telephone Solicitation." ........ 31
  - D. Plaintiff's Brief Confirms His Failure-To-Identify Claim Fails Because He Does Not Allege OpenAI "Made Contact" With Him. ........ 31
- III. Plaintiff's Brief Confirms His Do-Not-Call TCPA Claim And VTPPA Claims Must Be Dismissed Because OpenAI's Terms Of Service Prevent Unlawful Calls. ........ 33

CONCLUSION ........ 34

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Insurance Co.*,
28 F.4th 513 (4th Cir. 2022) ....................22

*Abboud v. Circle K Stores Inc.*,
2025 WL 307039 (D. Ariz. Jan. 27, 2025) ....................26

*ACA International v. FCC*,
885 F.3d 687 (D.C. Cir. 2018) ....................9

*Adams v. Bain*,
697 F.2d 1213 (4th Cir. 1982) ....................28

*Advocate Christ Medical Center v. Kennedy*,
605 U.S. 1 (2025) ....................22

*Aljizzani v. Middle East Broadcasting Networks, Inc.*,
__ F.4th ____, 2026 WL 1740863 (4th Cir. 2026) ....................18

*Alvarez Ronquillo v. Bondi*,
151 F.4th 522 (4th Cir. 2025) ....................4

*Arrington v. City of Raleigh*,
369 F. App’x 420 (4th Cir. 2010) ....................28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................24

*Bondi v. VanDerStok*,
604 U.S. 458 (2025) ....................8

*Calvin v. Humana Inc.*,
2022 WL 18956206 (S.D. Fla. Aug. 18, 2022) ....................26

*Carnegie-Mellon University v. Cohill*,
484 U.S. 343 (1988) ....................28

*Cavey v. MarketPro Homebuyers, LLC*,
542 F. Supp. 3d 418 (E.D. Va. 2021) ....................31

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2022) ....................24

*Cisco Systems, Inc. v. Doe I*,
609 U.S. ____, 2026 WL 1791225 (2026)....................6, 19, 20

*Cox Communications, Inc. v. Sony Music Entertainment*,
146 S. Ct. 959 (2026)....................19, 20

*Dobronski v. Tobias & Assocs., Inc.*,
769 F. Supp. 3d 681 (E.D. Mich. 2025)....................11

*Eagle v. GVG Capital, LLC*,
2023 WL 1415615 (W.D. Mo. Jan. 31, 2023) ....................26

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)....................14

*Harvey v. Cable News Network, Inc.*,
48 F.4th 257 (4th Cir. 2022) ....................16, 32

*Henderson v. Harmon*,
102 F.4th 242 (4th Cir. 2024) ....................27, 29

*Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026)....................1, 18, 19

*Howard v. Republican National Committee*,
164 F.4th 1119 (9th Cir. 2026) ....................7

*Hurley v. Messer*,
2018 WL 4854082 (S.D.W. Va. Oct. 4, 2018) ....................8, 9, 12, 13, 16, 30

*Johnson v. Baltimore City, Maryland*,
163 F.4th 808 (4th Cir. 2026) ....................18

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ....................30

*United States ex rel. Kyer v. Thomas Health System*,
__ F.4th ____, 2026 WL 1595887 (4th Cir. 2026)....................16, 18

*League of Women Voters of New Hampshire v. Kramer*,
2025 WL 919897 (D.N.H. Mar. 26, 2025) ....................11

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)....................14, 22, 23

*McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*,
780 F.3d 582 (4th Cir. 2015) ....................15, 16, 18

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)....................22

*Megaro v. McCollum*,
66 F.4th 151 (4th Cir. 2023) ....................33

*Mey v. All Access Telecom, Inc.*,
2021 WL 8892199 (N.D.W. Va. Apr. 23, 2021) ....................11, 13, 14

*Novia v. Mobiz, Inc.*,
2026 WL 752181 (D. Mass. Mar. 17, 2026)....................11

*Nunes v. Twitter, Inc.*,
194 F. Supp. 3d 959 (N.D. Cal. 2016) ....................12, 13

*Office of Attorney General v. Smartbiz Telecom LLC*,
2024 WL 4251895 (S.D. Fla. Sep. 19, 2024) ....................11

*Palmer v. Virginia High School League, Inc.*,
2026 WL 1481944 (W.D. Va. May 27, 2026) ....................28

*Pepper v. GVG Capital LLC*,
677 F. Supp. 3d 638 (S.D. Tex. 2023) ....................26

*Perrong v. CMI Marketing Research Inc.*,
2023 WL 6277299 (E.D. Pa. Sep. 26, 2023) ....................26

*Rice v. Adams*,
172 F.4th 428 (4th Cir. 2026) ....................24

*Rodriguez-Solis v. Blanche*,
177 F.4th 266 (4th Cir. 2026) ....................21

*Scruggs v. CHW Group, Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020)....................27

*Seabrook v. Driscoll*,
148 F.4th 264 (4th Cir. 2025) ....................23

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
605 U.S. 280 (2025)....................19, 20

*Smith v. Walmart Inc.*,
2024 WL 4819443 (W.D. Va. Nov. 18, 2024) ....................29

*Stevens-Bratton v. TruGreen, Inc.*,
437 F. Supp. 3d 648 (W.D. Tenn. 2020)....23

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023)....2, 19, 20

*Van Buren v. United States*,
593 U.S. 374 (2021)....9

*Whittaker v. Freeway Insurance Services America, LLC*,
2023 WL 167040 (D. Ariz. Jan. 12, 2023)....26

*Wilcox v. MarketPro South, Inc.*,
2023 WL 8806696 (D. Md. Dec. 20, 2023)....26

*Wilkins v. English Construction Co., Inc.*,
823 F. Supp. 3d 614 (W.D. Va. 2026)....28

*Wilson v. Better Mortgage Corp.*,
811 F. Supp. 3d 631 (S.D.N.Y. 2025)....26

*Wilson v. Hard Eight Nutrition LLC*,
804 F. Supp. 3d 1141 (D. Or. 2025)....22

*Wilson v. Skopos Financial, LLC*,
2025 WL 2029274 (D. Or. July 21, 2025)....26

*Zhu v. DISH Network, LLC*,
808 F. Supp. 2d 815 (E.D. Va. 2011)....33

**Statutes**

47 U.S.C. § 227....7, 21, 22, 25, 33, 34

Pub. L. No. 102-243, 105 Stat. 2394 (1991)....22

Va. Code § 59.1-510....30, 32

Va. Code § 59.1-512....31

Va. Code § 59.1-514....33, 34

Va. Code § 59.1-514.1....32

**Regulatory Materials**

47 C.F.R. § 64.1200....25

*Implications of Artificial Intelligence Technologies on Protecting Consumers from Unwanted Robocalls & Robotexts*, Declaratory Ruling, 39 FCC Rcd. 1783 (2024)....11

*Joint Petition Filed by Dish Network, LLC, et al.*, Declaratory Ruling, 28 FCC Rcd. 6574 (2013)....11

*Rules & Regulations Implementing the TCPA*, Declaratory Ruling and Order, 30 FCC Rcd. 7961 (2015)....11

**Other Authorities**

*Initiate*, American Heritage Dictionary (2d College ed. 1991)....6

*Make*, American Heritage College Dictionary (3d ed. 2000)....6

*National Do Not Call Registry FAQs*, FTC (Sep. 2023), https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs....24

## INTRODUCTION

Plaintiff William Lowrey's briefing makes sweeping concessions that confirm he has failed to state any claim against OpenAI. To try and rescue his fundamental pleading deficiencies, he asks—over and over again—for discovery. But that flunks Civil Procedure 101. "In order to proceed to discovery, a plaintiff must" first "state a claim to relief that is plausible on its face." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026). That is "not up for debate." *Ibid.* Because Lowrey has failed to plead facts that state a claim to relief, his Amended Complaint must be dismissed, and discovery has no role to play.

Start with the Amended Complaint's most fundamental deficiency: the Telephone Consumer Protection Act ("TCPA") and the Virginia Telephone Privacy Protection Act ("VTPPA") require that a defendant "make" or "initiate" telephone calls, and the Amended Complaint does not plausibly allege that OpenAI does either. Lowrey's own opposition briefing makes this clear. He concedes that "to 'make' and 'initiate'" a call means "to '***begin*** a call,'" Opp. to OpenAI MTD, ECF No. 65, at 24 (emphasis in original), and that calls "begin" when they are "***actually placed***" to a recipient's "phone," Opp. to Twilio MTD, ECF No. 63, at 17 (emphasis added). He further concedes that "Plaintiff's claim is ***not that OpenAI placed the call***." Opp. to OpenAI MTD 37 (emphasis added) (quotations omitted).

Those concessions are dispositive. If "make" and "initiate" mean placing a call and Lowrey's "claim is not that OpenAI placed the call," then OpenAI did not make or initiate calls. While Lowrey spends dozens of pages speculating about *other* things that OpenAI might have done, none of that matters because OpenAI cannot be liable under the TCPA or the VTPPA since it did not "make" or "initiate" the challenged telephone calls. All claims against OpenAI must be dismissed on this basis alone.

But even if the Court could overlook the clear statutory text and accept Lowrey's suggestion that all he needs to plead is OpenAI's "involvement" with the challenged telephone calls, the Amended Complaint would still fall short. That is because Lowrey's only allegation about such involvement is an error message saying that the "attempts" to connect to OpenAI's service "*failed*." Am. Compl. ¶ 239 (emphasis added). Lowrey's rank speculation about how a *failure* to use OpenAI's services somehow means a *successful* use of OpenAI's services falls far short of plausibility.

Lowrey's briefing also confirms that the Amended Complaint must independently be dismissed because he impermissibly seeks to hold OpenAI liable for a third party's use of its services. Lowrey expressly disclaims any theory that OpenAI itself made the calls, instead faulting OpenAI for not "implement[ing] … safeguards to prevent its platform from being used" by third-party telemarketers "for illegal … calls." Opp. to OpenAI MTD 28. That runs right into the Supreme Court's teaching that a plaintiff cannot hold a defendant liable "merely for knowing that [some] wrongdoers [a]re using its services and failing to stop them." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 503 (2023). That is precisely the theory Lowrey advances—and precisely the one *Taamneh* forecloses.

Lowrey's briefing confirms other fundamental flaws with his TCPA claims. He fails to show that the TCPA's protections for "residential" telephones extend to cellular telephones—and, alternatively, fails to point to any allegations showing that *his* cellular telephone is "residential." He does not dispute that he lacks a cause of action to bring his business-identification claim in Count Nine or any claim in Count Ten because those claims seek to enforce regulations that are enforceable only by the FCC. And he fails to show how the purpose of the calls he received was

to advertise services to him because he does not allege any advertisement or any means by which there would ever be such an advertisement.

Lowrey has also confirmed that his VTPPA claims must be dismissed. Although he bears the burden of establishing jurisdiction, Lowrey offers no basis for exercising supplemental jurisdiction over his novel state-law claims against OpenAI in the absence of any federal-law claims against it. And his briefing confirms that his VTPPA claims fail for many of the same reasons as his TCPA claims.

Lowrey has now twice failed to state a plausible claim against OpenAI, and his opposition brief confirms that he cannot do so. The Court should dismiss with prejudice all claims against OpenAI.

## ARGUMENT

### I. PLAINTIFF'S BRIEF CONFIRMS HE DOES NOT PLAUSIBLY ALLEGE OPENAI VIOLATED THE TCPA.

OpenAI's motion to dismiss explained that Lowrey's federal TCPA claims against OpenAI—Counts One, Nine, and Ten of the Amended Complaint—must fail for four independent reasons. *First*, all of Lowrey's TCPA claims fail because OpenAI did not "make" or "initiate" calls. OpenAI MTD 11–30. *Second*, Lowrey's do-not-call claim (Count One) fails because he is not a "residential telephone subscriber" and the allegations otherwise are implausible. *Id.* at 30–36. *Third*, Lowrey has no cause of action to pursue claims premised on violations of 47 C.F.R. § 64.1200(b) (Counts Nine and Ten) because those FCC regulations are not privately enforceable. *Id.* at 36–37. *Fourth*, Lowrey's do-not-call claim (Count One) and his opt-out claim (Count Ten) fail because the alleged calls were not "telephone solicitations" or "telemarketing." *Id.* at 37–39. Nothing in Lowrey's opposition brief suggests otherwise.

### A. Plaintiff's Brief Confirms Counts One, Nine, And Ten Against OpenAI Must Be Dismissed Because Plaintiff Does Not Plausibly Allege OpenAI "Made" Or "Initiated" Any Calls.

Lowrey's opposition brief confirms that he has failed to plausibly allege that OpenAI made or initiated calls for three independent reasons. *First*, OpenAI does not make or initiate calls at all. OpenAI MTD 11–21. *Second*, Lowrey has not pled any factual content that plausibly links OpenAI to the calls alleged in this case. *Id.* at 21–25. *Third*, Lowrey cannot hold OpenAI liable for merely failing to stop an alleged TCPA violator from using its platform. *Id.* at 25–30.

#### 1. <u>Plaintiff's Brief Confirms The Complaint Does Not Plausibly Allege That OpenAI Makes Or Initiates Calls.</u>

Lowrey's response briefs make three key concessions that are fatal to this case and that confirm any amendment would be futile. *First*, Lowrey agrees that to "make" or "initiate" a call means "to '*begin* a call.'" Opp. to OpenAI MTD 24; *see also* Opp. to Twilio MTD 16 ("'initiate' or 'make' under the TCPA refer to the 'manner in which a call to a telephone is begun'"). *Second*, Lowrey agrees that calls "begin" when they are "actually placed" to a recipient's "phone" on "[Twilio's] platform." Opp. to Twilio MTD 16–17. *Third*, Lowrey concedes that his "claim is ***not*** that OpenAI placed the call[s]" to his telephone. Opp. to OpenAI MTD 37 (emphasis added) (quotations omitted). Those concessions are dispositive because they confirm that any use of OpenAI's services occurs only after a call has begun.

Start with the law. Lowrey agrees that every single one of his TCPA claims against OpenAI reach only parties that "made" or "initiated" calls. *See* OpenAI MTD, ECF No. 52, at 11 (quoting operative statutes and regulations from each count). And all agree that, as undefined terms, "make" and "initiate" must be "give[n] [their] plain meaning." *Alvarez Ronquillo v. Bondi*, 151 F.4th 522, 526 (4th Cir. 2025). Lowrey does not dispute that contemporary dictionaries define both "make" and "initiate" to refer to the manner in which a call "begins," is "set going," or is

"caused to exist." OpenAI MTD 11–12. Indeed, Lowrey favorably cites caselaw holding that "to 'make' and 'initiate' equate to '*begin* a call,'" Opp. to OpenAI MTD 24, and he makes arguments about when "the calls *began*," *ibid.* So, everyone agrees calls are "made" or "initiated" by the party that causes them to "begin."

With the law established, next consider the facts Lowrey alleges about who places calls. Lowrey agrees that a call begins when a caller (here, allegedly Fresh Start) places calls through a calling platform (here, allegedly Twilio). In Lowrey's own words, "Twilio 'causes' and 'brings to pass' such calls and messages from its platform." *See* Opp. to Twilio MTD 16. "Twilio … makes and sends … calls per the instructions it receives from its users." *Id.* at 15–16 (citing Amended Complaint). "[T]he calls themselves came from Twilio's platform and thus the calls did not begin until Twilio actually placed the calls to Plaintiff's phone." *Id.* at 17. And "Plaintiff's claim is ***not*** that OpenAI placed the call." Opp. to OpenAI MTD 37 (emphasis added) (quotations omitted).

Lowrey further agrees that a third-party Twilio user (here, allegedly Fresh Start) must trigger OpenAI's Realtime API to generate audio content *after* the call is placed. He explains that a Twilio user must "trigger the OpenAI Realtime API" "*after* a user picks up." Opp. to OpenAI MTD 7 (emphasis added) (quoting document referenced in paragraphs 142–44 of the Amended Complaint). He agrees a Twilio user must "dial[ ] a number," and the user can "initialize [a] session with" "the OpenAI Realtime API" only *after* "the call is picked up." *Ibid.* (quoting document referenced in paragraphs 72, 139–41, and 146 of the Amended Complaint). He agrees that calls are placed using "Twilio's phone calling capability," *id.* at 8 (quoting document referenced in paragraph 146 of the Amended Complaint), and that the "Realtime API generates audio content" only "*during* calls." *Ibid.* (alterations accepted); *see also id.* at 10 ("*during* the

phone call" (quoting document referenced in paragraphs 72, 139–41, and 146 of the Amended Complaint)). "Indeed," Lowrey remarks, "there is nothing earth-shattering in the fact that OpenAI is triggered *after the recipient picks up*." *Id.* at 7 (emphasis added).

Because all agree on the law and the facts alleged in the Amended Complaint, resolution of OpenAI's motion to dismiss is straightforward. Calls *begin* when a caller (here, allegedly Fresh Start) uses a calling platform (here, allegedly Twilio) to place phone calls. At that point, the call has been "cause[d] to begin," *Initiate*, American Heritage Dictionary 662 (2d College ed. 1991), and "cause[d] to exist," *Make*, American Heritage College Dictionary 818 (3d ed. 2000). And all agree OpenAI has nothing to do with that process: "Plaintiff's claim is ***not*** that OpenAI placed the call[s]" to his telephone. Opp. to OpenAI MTD 37 (emphasis added) (quotations omitted). Indeed, by the time a Twilio user "trigger[s] the Realtime API" "*after* a user picks up," *Id.* at 7 (emphasis added), the call has already begun. *Accord* Opp. to Twilio MTD 17 (conceding that "calls … begin … [when] Twilio actually place[s] the calls").

Finally, while Lowrey alleges a lot of gripes about OpenAI, the TCPA's straightforward language bears emphasis. It is illegal to "make" or "initiate" calls. It is *not* illegal to "fail[ ] to block" others from using a general-purpose API, Opp. to OpenAI MTD 28, to "fail[ ] to take" undefined "steps to stop unlawful telemarketing calls" by third parties, *id.* at 29, or to "fail[ ] to put in place" unspecified "safeguards" to prevent third-party calls, *id.* at 31. Perhaps Lowrey thinks it would be better policy for the TCPA to authorize suits for this conduct. But, as the Supreme Court reiterated just last week, "the power to create causes of action belongs to Congress." *Cisco Sys., Inc. v. Doe I*, 609 U.S. ____, 2026 WL 1791225, at *7 (2026). Here, Congress chose to authorize a cause of action against those that "make" or "initiate" calls—not for providing a general-purpose technology service that is allegedly used by bad actors. Lowrey's

attempt to radically expand the TCPA's scope is wholly inconsistent with the statute's plain language and the caselaw, and should be rejected.

Lowrey offers several counterarguments to this straightforward application of law to fact, but he cannot escape the weight of his own concessions.

a. *The OpenAI Realtime API's Generation Of Content On A Call Is Not "Initiation."*

Lowrey contends (at 24) that OpenAI somehow "made or initiated the call" because Fresh Start, a third party, allegedly used OpenAI's Realtime API to "speak[ ] on the[ ] calls." But that misses the mark. By the time a user triggers the API to "speak" on a call, the call has already begun. Indeed, Lowrey agrees (at 24) that "make" or "initiate" means "to 'begin a call.'" *See also* OpenAI MTD 11–12 (citing dictionaries). And he agrees calls begin on Twilio's platform where a user "'causes' and 'brings to pass' … calls and messages." Opp. to Twilio MTD 16; *see also* OpenAI MTD 12–16. That forecloses any liability against OpenAI. *See supra*.

Fighting his own definitions, Lowrey next cites (at 24) *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026), for the proposition that a party "makes" a call when the call recipient hears his voice. That misunderstands both that case and the provision it construed. *Howard* was interpreting the clause "make any call … using … an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). The use of "an artificial or prerecorded voice" is of course an element to establish a violation of that provision. But, as *Howard* explains, the "phrase 'using an artificial or prerecorded voice' … *modifies the verbs 'make' and 'initiate.'*" 164 F.4th at 1126 (emphasis added). Thus, "using an artificial or prerecorded voice" triggers liability *only* for the person(s) that caused the call to begin in the first place. *See id.* at 1120 (accepting as true that the defendant "placed, or caused to be placed" the underlying message).

Indeed, that is exactly how "an ordinary speaker" would "describe" what it means to make or initiate a call. *Bondi v. VanDerStok*, 604 U.S. 458, 471 (2025). Consider a simple example: an individual dials a number, nobody answers, and the caller does not leave a voicemail. An ordinary speaker would say that the individual "made" (or "initiated") a call because he dialed the number. And one would say that even though there was never *any* voice on the call. Again, that is because he made a call—brought it into existence—when he dialed the number. No voice is necessary for a call to be "made" or "initiated." So, even accepting as true that "there would only be mere silence without OpenAI's involvement," Am. Compl. ¶ 274, that does not change the fact that calls are "made" and "initiated" when the caller (here, allegedly Fresh Start) uses a calling platform (here, allegedly Twilio) to dial numbers. Again, "Plaintiff's claim is ***not*** that OpenAI placed the call." Opp. to OpenAI MTD 37 (emphasis added) (quotations omitted).

As OpenAI's motion explained (at 15–16), precedent confirms this commonsense understanding of "make" and "initiate." In *Hurley v. Messer*, 2018 WL 4854082 (S.D.W. Va. Oct. 4, 2018), another court in this Circuit rejected liability for the platform Fiverr where it supplied "voice actors" that "read [a] prepared script" and thus provided the voice "for [a] prerecorded message" on calls dialed by another party. *Id.* at *3. Even accepting as "true" that Fiverr "had knowledge" of the calls, had "the right to control" the voice actors, and was "the 'voice'" on the call, those "allegations [we]re insufficient to show Defendant Fiverr initiated the telephone calls." *Ibid.* The reason, the court explained, is that "providing an actor to read the content of an illegal message is not the equivalent of being 'so involved in *the placing* of a specific telephone call as to be deemed *to have initiated it.*'" *Id.* at *4 (emphasis in original). Just like Fiverr, OpenAI did not "initiate" a call even accepting as true that it "provid[ed] an [API]" that a third party used to generate "the content of an illegal message." *Ibid.*

Lowrey offers no response to this on-point, persuasive reasoning. His only mention of *Hurley* (at 29) is to observe that the "the court refused to dismiss claims against the two calling platform defendants." That is true but irrelevant to *OpenAI's* motion to dismiss: OpenAI is not a calling platform (Twilio is). Rather, OpenAI—just like Fiverr—is alleged only to have provided a resource that a third party used to generate the "content of an illegal message." *Hurley*, 2018 WL 4854082, at *4. As *Hurley* explains—and Lowrey ignores—that is not call initiation.[1]

All of this reinforces OpenAI's point (at 16–17) that Lowrey's interpretation would hold OpenAI liable for user decisions that are outside its control. Indeed, Lowrey does not dispute that OpenAI "does not choose which number to call, it has no way of knowing the caller's relationship with the recipient, it does not decide the purpose for the call, and it is not in charge of who places the call or how to contact them or to opt out of their future calls." OpenAI MTD 16–17. That outcome confirms the irreconcilable tension between Lowrey's interpretation and the statutory scheme. *Ibid.*

The briefing also confirms OpenAI's point (at 17–18) that Lowrey's legal theory would render countless general-purpose service providers liable under the TCPA. *Contra Van Buren v. United States*, 593 U.S. 374, 393–94 (2021) (rejecting interpretation of a statute that would give it a "breathtaking" scope); *ACA Int'l v. FCC*, 885 F.3d 687, 697–98 (D.C. Cir. 2018) (rejecting interpretation of the TCPA that would give it "an eye-popping sweep"). Lowrey nominally

---

[1] Further, even if one were to accept Lowrey's incorrect premise that a call is "made" or "initiated" when the call recipient hears a voice, OpenAI would still not be liable for a simple reason: Lowrey alleges that a third-party caller (here, allegedly Fresh Start)—*not* OpenAI—"trigger[s]" the Realtime API and thus causes a voice to begin speaking. *See* Am. Compl. ¶ 144 (explaining that Twilio user/developer must "trigger the OpenAI Realtime API to have the AI talk first" "after a user picks up"); *see also* OpenAI MTD 14–15; Opp. to OpenAI MTD 7–9 (agreeing with this description). Thus, even if OpenAI's Realtime API supplies the voice, the third-party caller (here, allegedly Fresh Start) *initiates* that voice by causing it to begin speaking.

disputes this sweep (at 31–32), but his brief only reinforces it. He claims (at 27–28) that OpenAI should be liable because "'bad actors' … use its platform … for illegal spam calls." But bad actors use spreadsheets to store and automatically dial numbers "for illegal spam calls." They use word processors to proofread scripts "for illegal spam calls." And they use computers and smartphones to literally place "illegal spam calls." To be sure, OpenAI's services may in some ways differ from these other technologies. But they are allegedly similar in the way that Lowrey says matters: they are "use[d] … for illegal spam calls," Opp. to OpenAI MTD 27–28, many "calls involve[ ]" these technologies, *id.* at 21, and spreadsheets, smartphones, and computers can power automated calling processes with "no human involvement," *id.* at 30. Under Lowrey's interpretation, all of these general-purpose services would be liable even though they do not "make" or "initiate" calls in any sense of those words. That is absurd and confirms that Lowrey's interpretation is wrong as a matter of law.

b. *The FCC's Guidance On Dialing Platforms Does Not Render OpenAI A Call Initiator.*

Unable to reconcile his position with the statutory text, Lowrey next asks this Court (at 26–27) to "look[ ] at the totality of the circumstances" and then make a policy judgment about "who should be deemed to have initiated a call." He then lists off a seven-factor test to assess whether "OpenAI … should be considered to have made the calls in question," and purports to address a couple of those factors. *See* Opp. to OpenAI MTD 27–30. This is a non-starter.

*First*, Lowrey purports to derive this test from FCC guidance, but the FCC has *never* held that providers of general-purpose services can be liable under the TCPA. Rather, as Lowrey concedes (at 27 n.14), "these factors have traditionally"—in reality, *exclusively*—"been applied to traditional calling platforms." And the FCC's exclusive focus on callers and calling platforms is no mere "tradition." It reflects the limits of the statutory text. The TCPA does not give the FCC

freestanding authority to delineate who "should be" liable for calls as a policy matter. Rather, the FCC has explained, it is bound by "the word 'initiate,'" which means "to set going, by taking the first step" with a "direct connection" to the "making of a telephone call." *Joint Petition Filed by Dish Network, LLC, et al.*, Declaratory Ruling, 28 FCC Rcd. 6574, ¶ 26 (2013). The FCC found that this term could include dialing platforms because they are "involved in *the placing of*" calls. *Rules & Reguls. Implementing the TCPA*, Declaratory Ruling and Order, 30 FCC Rcd. 7961, ¶ 30 (2015) (emphasis added). Indeed, with regard to AI technology specifically, the FCC has found that "*callers that use* such technologies" may be subject to the TCPA—not the underlying AI platforms. *Implications of Artificial Intelligence Techs. on Protecting Consumers from Unwanted Robocalls & Robotexts*, Declaratory Ruling, 39 FCC Rcd. 1783, ¶ 9 (2024) (emphasis added).

Lowrey cites *no* authority for the proposition that any general-purpose, non-calling service provider (much less an AI provider) can be held liable for calls placed by a third party that uses its service. And for good reason: such an authority would violate the statutory text. Because Lowrey's "claim is ***not*** that OpenAI placed the call[s]" to his telephone, Opp. to OpenAI MTD 37 (emphasis added), the FCC's guidance has no application here.[2]

---

[2] Every single case Lowrey cites that applies the FCC's guidance recognizes that *placing* calls is the operative trigger for liability. *See, e.g.*, *Novia v. Mobiz, Inc.*, 2026 WL 752181, at *4 (D. Mass. Mar. 17, 2026) (analyzing complaint against company that "took the steps necessary to *physically place* the call" and assessing whether it was "involved *in placing the call*" (emphasis added)); *Mey v. All Access Telecom, Inc.*, 2021 WL 8892199, at *4–5 (N.D.W. Va. Apr. 23, 2021) (analyzing complaint against "a provider of auto-dialing services" and assessing "the totality of the facts and circumstances surrounding *the placing* of a particular call" (emphasis added)); *League of Women Voters of N.H. v. Kramer*, 2025 WL 919897, at *13 (D.N.H. Mar. 26, 2025) (analyzing complaint against dialing platforms and assessing whether they were "so involved *in placing the calls* as to be deemed to have initiated them" (emphasis added)); *Dobronski v. Tobias & Assocs., Inc.*, 769 F. Supp. 3d 681, 698 n.9 (E.D. Mich. 2025) (explaining that FCC guidance applies only to "a 'software or a platform that *facilitates calling*, or hosting a *calling service*'" (emphasis added)); *Off. of Att'y Gen. v. Smartbiz Telecom LLC*, 2024 WL 4251895, at *1, *5 (S.D. Fla. Sep. 19, 2024) (analyzing complaint against party that "routes … telephone calls … to be connected to recipients"

Indeed, courts have drawn this exact distinction. As *Hurley* explained, creating "the content of an illegal message is not the equivalent of being 'so involved in *the placing* of a specific telephone call as to be deemed *to have initiated it*." 2018 WL 4854082, at *4 (emphasis in original). Or consider *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959 (N.D. Cal. 2016). In that case, the social-networking platform Twitter would send "tweets" (posts on its website) "via text message to [users'] cell phones." *Id.* at 961. The court held that Twitter was the "maker" of such texts because it was the "actual sender." *Id.* at 962. But it rejected the contention that "the author of the tweet" could be liable for the texts. *Ibid.* Even though that author provided the content for the communication, he was "not involved in the mechanics of actually transmitting any text message to anyone" and so did not fall within "the ordinary meaning of the phrase 'make any call.'" *Ibid.* So too for OpenAI.

*Second*, even if the Court accepted Lowrey's invitation to become the first court ever to extend the FCC's guidance to a party that does not *place* calls (it should not), OpenAI would still not be liable. After all, Lowrey concedes that six of the seven factors in his proposed test counsel *against* liability. He does not allege that OpenAI "controls the timing or initiation of the call" (factor 2); "controls who receives the call" (factor 3); "places calls" (factor 4); "enables fraudulent spoofing of telephone numbers" (factor 5); "assists telemarketers in blocking Caller ID," (factor 6); or "offers a calling platform," (factor 7). Opp. to OpenAI MTD 26–27.

The *only* factor Lowrey alleges would support liability is that OpenAI "controls what it says on call [sic]." *Id.* at 30. But, as explained, courts routinely reject as implausible allegations that a party "makes" or "initiates" a call based merely on its role in creating content that another

---

and holding that "Defendant was involved *in the placing of the telephone calls*" (emphasis added)).

party chooses to put on a call. *See Hurley*, 2018 WL 4854082, at *4; *Nunes*, 194 F. Supp. at 962. And here, OpenAI does not come up with the subject matter of a call on its own initiative but is prompted by users (here, allegedly Fresh Start) with instruction about what to discuss (here, allegedly probate services). *See* OpenAI MTD 7; *see also* Opp. to OpenAI MTD 9–11 (agreeing that "users" provide "prompts and instructions"). Moreover, it is not OpenAI's choice to put *any* content on *any* call. As materials incorporated into the Amended Complaint explain, and as Lowrey concedes in his briefing, *a third party* (here, allegedly Fresh Start using Twilio's services) must "trigger the OpenAI Realtime API to have the AI talk." Opp. to OpenAI MTD 7 (quoting document incorporated by reference); *see also ibid.* (explaining that Twilio user must "initialize the session" to use "the OpenAI Realtime API"); OpenAI MTD 14–15 ("OpenAI does not even choose to engage the Realtime API during an already-initiated call").[3]

Lowrey also invents new factors that appear nowhere in the FCC's guidance or the caselaw applying it. He says (at 27–29) that OpenAI knows that some subset of its customers use AI technology to generate content during their allegedly unlawful calls. But the relevant factor asks "[w]hether a defendant 'who offers *a calling platform service* … has knowingly allowed its client(s) to use that platform for unlawful purposes.'" *Mey*, 2021 WL 8892199, at *4 (emphasis added). OpenAI does not offer "a calling platform service," and Lowrey cites no FCC guidance or caselaw ever applying this factor to general-purpose services. Nor does he explain how

[3] Lowrey says (at 36) he pleaded that "OpenAI determines the content in the call." But that is only half the story. Lowrey concedes in his briefing—and incorporates by reference documents in the Amended Complaint that explain—that a third-party user is the one that ultimately chooses whether to use OpenAI's Realtime API on telephone calls. So even if the Realtime API "determines content in the call," Lowrey has nowhere pleaded that OpenAI chooses to put that content on the call in the first place. Instead, he concedes that a third-party Twilio user (here, allegedly Fresh Start) is the one that ultimately decides to "trigger" the Realtime API to generate content on a phone call.

extending this factor to parties that do not place calls would be consistent with statutory text limited to those that "make" or "initiate" calls. Lowrey also says (at 30) "OpenAI is in control of the timing of *content on a call*." But the actual factor to which he alludes asks "[t]he extent to which the defendant controls the *timing or initiation of the call*." *Mey*, 2021 WL 8892199, at *4 (emphasis added). In other words, the question is whether the defendant decides when to *place* the call—not whether it decides the cadence of speech after the call has already been initiated. Again, Lowrey cites no FCC guidance or caselaw applying this timing factor outside of call *placement*, nor does he square such an application with the statutory text.

*Finally*, the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), forecloses Lowrey's attempts to expand both the statute and the FCC guidance interpreting it. That decision reinforces that courts must give statutes their "single, best meaning," *id.* at 400, "based on the traditional tools of statutory construction, not individual policy preferences," *id.* at 403. Here, again, the statute reaches only those who "make" or "initiate" calls—not those who are "involved" in calls, or those that provide general-purpose services used by others that "make" or "initiate" calls. Lowrey argues (at 27 & n.14) that AI "represents a new technological evolution" and so asks this Court to supplant Congress and update the TCPA based on his view of "what should be considered" actionable. Ultimately, then, Lowrey's "quarrel is with Congress," which did not assign liability as broadly "as he would have liked." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). In this forum, "[t]he Court must interpret what Congress wrote" and cannot update "the TCPA" to sweep in new "technology." *Id.* at 408–09. Applying the statute as written, OpenAI does not "make" or "initiate" calls.

c. *Lowrey's Pleas For Discovery Do Not Render OpenAI A Call Initiator.*

Lowrey's repeated calls for discovery (at 5, 19, 22 & n.8, 25, 34, 37 n.19, 40) misunderstand civil procedure. His operative complaint must "allege facts to satisfy the elements of a cause of action created by [th]e statute." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

The Amended Complaint alleges that OpenAI is involved in calls in three ways. First, it alleges that "OpenAI has created an interface that allows other platforms to connect to it in order to allow OpenAI to engage in conversations in real-time through these platforms." Am. Compl. ¶ 150. Second, it alleges that OpenAI's "laissez-faire approach" has failed to stop "bad actors" from using that service "for telemarketing." *Id.* ¶ 111. And third, it alleges that OpenAI's Realtime API "determines the content in [a] call, such as by determining what to say," *id.* ¶ 274, effectively serving as the "voice," Opp. to OpenAI MTD 39 ("Amended Complaint alleges that OpenAI made the artificial voice in the calls [Lowrey] received").[4] Even accepting those facts as true, they do not "satisfy the elements of" the TCPA's "cause of action." *McCleary-Evans*, 780 F.3d at 585. As explained above, none of these facts, if true, would constitute "making" or "initiating" calls.

Lowrey's suggestion that that he lacks "sufficient facts to determine who actually dialed his number" cannot salvage his claim against OpenAI because he concedes that "Plaintiff's claim

[4] The Amended Complaint also selectively and incorrectly describes a video of a staged OpenAI demonstration, *see* Am. Compl. ¶¶ 87–96, in which a presenter "dropped some code" that allowed him to, *inter alia*, use "Twilio's phone-calling capabilities" to place a call, OpenAI MTD 20–21 (quoting and contextualizing the cited video). Lowrey now concedes "that this was a demonstration," Opp. to OpenAI MTD 33, that he cited to allege that the Realtime API "determine[s] what words to say in conversation," *id.* at 34. He has clarified that "Plaintiff's claim is not that OpenAI placed the call[s]" to his phone, *id.* at 37 (quotations omitted).

is ***not*** that OpenAI placed the call," Opp. to OpenAI MTD 37; *see* Am. Compl. ¶ 272, and that OpenAI's Realtime API does not dial phone numbers, OpenAI MTD 5–7; *see* Opp. to OpenAI MTD 7 (agreeing Twilio customer must "dial[ ] a number" and then trigger the Realtime API "after a user picks up"); *ibid.* (agreeing "that OpenAI is triggered after the recipient picks up"); *id.* at 8 (agreeing the "Realtime API generates content *during* calls" (alterations accepted)); *id.* at 9 (agreeing "Twilio" is used "for the phone calls" and "OpenAI for the speech to speech AI").

No amount of discovery will fix that dispositive flaw in Lowrey's legal theory. And to the extent Lowrey suggests OpenAI took some other action that might be unearthed in discovery, he misunderstands the pleading standard. *McCleary-Evans*, 780 F.3d at 587 ("*Iqbal* and *Twombly* … reject[ed] a standard that would allow a complaint to survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery" (cleaned up)); *see also United States ex rel. Kyer v. Thomas Health Sys.*, __ F.4th ____, 2026 WL 1595887, at *10 (4th Cir. 2026) ("Perhaps what [the plaintiff] means to suggest is that each allegation is smoke; combined, there must be fire *somewhere*. Sometimes that is so. But that is not how the law works. The complaint must identify the fire.").

Because Lowrey has not "plausibly allege[d] facts that, if proven, would be sufficient to establish each element of [a] claim" under the TCPA, his Amended Complaint cannot "survive a motion to dismiss." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268–69 (4th Cir. 2022); *accord Hurley*, 2018 WL 4854082, at *4 ("allowing discovery where Plaintiff has failed to allege a plausible claim [of call initiation] would be directly contrary to the mandates of *Iqbal* and *Twombly*").

2. Plaintiff's Brief Confirms He Has Not Plausibly Alleged Any Facts Showing That OpenAI Made Or Initiated The At-Issue Calls.

Even if Lowrey had plausibly alleged that OpenAI "makes" or "initiates" calls at all (he has not), his response brief confirms that he has not come even close to plausibly alleging that OpenAI made the at-issue calls to Lowrey.

As OpenAI's motion explained (at 21–25), Lowrey has pled only one fact that he says links the at-issue calls to OpenAI involvement: the calls played an error message (i) saying that the "attempts" to use OpenAI's Realtime API "failed," and (ii) referencing a webpage explaining that the caller (allegedly Fresh Start) had failed to pay its bill to use OpenAI's services. *See* Am. Compl. ¶¶ 233, 237, 239–40, 242–43, 269; *accord* Opp. to OpenAI MTD 21 (agreeing that "error code" tells "OpenAI customers" they "have reached their monthly usage limit or consumed all their credits"), 35 (agreeing that error message means that Fresh Start "exceeded" its "credit limit" to use OpenAI's services), 36 (agreeing that error message means Fresh Start "ran out of credits" to use OpenAI's services). That is, Lowrey does not allege that OpenAI placed the calls; rather, he alleges that whoever *did* place the calls "failed" to use OpenAI's services. It is hard to imagine a less plausible set of allegations to establish that OpenAI "made" or "initiated" the calls.

Lowrey's response is untenable. He claims (at 35–36 & 21–22 n.8) that Fresh Start could have used OpenAI's Realtime API to do *something*, and then—twice in a row—just happened to fall behind on its payments right when it came time for the API to do the one thing he alleges only it can do: "have a conversation" with "actual interaction." Am. Compl. ¶ 267; *accord id.* ¶¶ 239–42.[5] Lowrey alleges nothing that would justify such an "unwarranted and implausible" inference.

[5] Lowrey says (at 38) "OpenAI is … wrong to claim there was 'no interaction' on the calls Plaintiff received." But the Amended Complaint could not be clearer. Lowrey "heard a pre-recorded female voice." Am. Compl. ¶¶ 236, 241 ("recorded message"). When he "*tried* to speak with someone, he *instead* heard a message that gave an error code." *Id.* ¶ 269 (emphasis added). Thus,

*Aljizzani v. Middle E. Broad. Networks, Inc.*, __ F.4th ____, 2026 WL 1740863, at *5 (4th Cir. 2026). That implausibility is "particularly [so] in light of the obvious alternative explanation," *ibid.*, proposed by Lowrey's own allegations: (i) Fresh Start placed the calls through Twilio's platform, Am. Compl. ¶ 265 ("The calls originated from Twilio's platform"); (ii) Fresh Start played a prerecorded message about its services, *id.* ¶¶ 233 (alleging call "sounded … like an artificial voice or pre-recorded message"), 241 (alleging calls played "recorded message"); and (iii) Fresh Start was never able to use OpenAI's API because it failed to purchase credits, *see id.* ¶¶ 239 (alleging "attempts failed"), 240 (alleging "OpenAI customer[ ]" lacked "credits"); *accord Johnson v. Balt. City, Md.*, 163 F.4th 808, 821 (4th Cir. 2026) (holding "allegations as pled cannot support a reasonable inference of [liability] because [defendant]'s conduct is consistent with" conduct not giving rise to liability); *Hikma Pharms.*, 146 S. Ct. at 1399, 1401 (finding wrongdoing implausible as a matter of law where there was "an 'obvious alternative explanation'").

At bottom, it is a flatly "unwarranted logical leap[ ]," *Kyer*, __ F.4th at ____, 2026 WL 1595887, at *9, to infer that Fresh Start *used* OpenAI's Realtime API based on an error code explaining that Fresh Start *could not use* OpenAI's Realtime API. Lowrey's fanciful "speculation" to the contrary stops far "short of the line between possibility and plausibility of entitlement to relief." *McCleary-Evans*, 780 F.3d at 586; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard … asks for more than a sheer possibility").

3. Plaintiff's Brief Confirms He Does Not Plausibly Allege Any Facts That Would Support Holding OpenAI Liable For Its Users' Alleged Misdeeds.

OpenAI's motion to dismiss explained (at 25–30) that in three recent cases, the Supreme Court has rejected liability where a plaintiff sought to hold a company liable for offering a service

---

Lowrey alleges a prerecorded message and an unsuccessful attempt to respond.

to the public and not stopping bad actors from using that service. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023); *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025); *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959 (2026).

As of last week, the Supreme Court has made that four. In *Cisco Systems, Inc. v. Doe I*, 609 U.S. ____, 2026 WL 1791225 (2026), plaintiffs contended that Cisco and its executives violated the Torture Victim Protection Act because Cisco "develop[ed] surveillance technology that allowed [the nation of] China" to torture them. *Id.* at *5. The Court found that this did not plausibly allege a statutory violation against Cisco. First, it held that the statute did not support aiding-and-abetting liability because it "nowhere mentions" such liability. *Id.* at *9 ("that silence is enough to settle the issue"). Then, it held that the plaintiffs could not show direct liability under the statutory text because Cisco itself had not engaged in torture, and direct liability does not capture those "who give a degree of aid to those who" "engage in the proscribed activities." *Ibid.* *Cisco*, like the other cases, shows that Lowrey has failed to state a claim against OpenAI because he alleges only that OpenAI "developed … technology that" a third party used when it allegedly "engage[d] in … activities" "proscribed" by statute. *Id.* at *5, *9; *see also Hikma Pharms.*, 146 S. Ct. at 1402 (reiterating that plaintiffs "may not rely on 'mere omissions, inactions, or nonfeasance'" because "[o]therwise, ordinary merchants could become liable for any misuse of their goods and services" (quoting *Taamneh*, 598 U.S. at 489)).

Lowrey asserts (at 40) that these on-point Supreme Court cases are inapposite because "OpenAI was directly involved in the[ ] calls." But Lowrey's own briefing confirms that his allegations are exactly the kind that the Supreme Court held cannot support aiding-and-abetting liability. Lowrey says that *third parties* employ OpenAI's technology when those *third parties* place calls that violate the TCPA. Opp. to OpenAI MTD 3 ("OpenAI provides 'Voice agents' *to*

*its developers*" (emphasis added) (citing Am. Compl. ¶ 132)), 5 ("OpenAI knows that 'bad actors may try to misuse' its technology." (quoting Am. Compl. ¶ 107)), 7 (explaining that third-party user must "trigger the OpenAI Realtime API" and "initialize the session with OpenAI" (quoting documents referenced in Amended Complaint)), 27 ("OpenAI is fully aware that 'bad actors' seek to use its platform for unlawful means"), 29 (alleging "OpenAI's clear notice of bad actors trying to use its platform and numerous examples of telemarketer spammers … us[ing] OpenAI" technology). And his claim is only that OpenAI was "involved" because it failed "*to prevent* telemarketing spam calls" placed by those third parties. *Id.* at 5 (emphasis added), 28 (alleging lack of "safeguards *to prevent* its platform from being used for illegal spam calls"; alleging OpenAI "*failed to block* … unlawful conduct" (emphasis added)), 29 ("failure to take appropriate steps *to stop* unlawful telemarketing calls" (emphasis added)), 42 ("OpenAI has chosen not to implement … controls *to block* spam calls" (emphasis added)).

Lowrey thus alleges *exactly* what the Supreme Court has held cannot support aiding-and-abetting liability: "an alleged failure to stop [a bad actor] from using [one's] platform[ ]." *Taamneh*, 598 U.S. at 500; *accord Smith & Wesson*, 605 U.S. at 297 (finding no liability where defendants allegedly "allow[ed] … 'bad actors' to make illegal use of their wares"); *Cox*, 146 S. Ct. at 968 (finding no liability "for failing to terminate … service to infringing accounts"); *Cisco*, 2026 WL 1791225, at *9 (finding no liability for the provision of service that allegedly "give[s] a degree of aid to those who" violated a statute).

Lowrey tries to deflect from these cases, arguing (at 40) that he "has not pleaded any 'aiding and abetting' theory." But that makes his position worse, not better. "[A]iding-and-abetting liability" is "*broad[er]*" than direct liability. *See Cisco*, 2026 WL 1791225, at *9 (emphasis added) (explaining that direct liability requires a "causal connection between

[defendant] and victim," while "[a]iding-and-abetting liability, by contrast, encompasses many forms of assistance provided by those who are one (or more) steps removed"). If Lowrey cannot even show that OpenAI aided and abetted Fresh Start "making" or "initiating" the calls to his phone, then *a fortiori* he cannot show that OpenAI *itself* "made" or "initiated" the calls.[6]

**B. Plaintiff's Brief Confirms Count One Against OpenAI Must Be Dismissed Because Plaintiff Does Not Plausibly Allege That He Is A "Residential Telephone Subscriber."**

Lowrey's brief confirms that Count One must be dismissed because (i) cell phones are not "residential telephones" within the meaning of the TCPA, OpenAI MTD 30–33, and (ii) in the alternative, Lowrey has failed to plausibly allege that *his* cellphone was residential, *id.* at 33–36.

1. Plaintiff's Brief Confirms Cellular Telephones Are Not Residential Telephones.

OpenAI's brief showed (at 30–33) that under the text, structure, and history of the TCPA, cellular telephones are not "residential telephones" within the meaning of 47 U.S.C. § 227(c). Lowrey disputes none of this. He does not dispute that the "plain meaning" of residential telephones excludes cellular telephones. He does not dispute that contemporary usage at the TCPA's enactment shows that residential telephones mean only landlines. And he does not dispute that the TCPA uses both the terms "cellular telephone" and "residential telephone," belying the notion that they are interchangeable. Lowrey does not meaningfully engage any of those textual, structural, or historical points. That failure forfeits any contrary statutory argument and confirms that Count One must be dismissed. *See Rodriguez-Solis v. Blanche*, 177 F.4th 266, 277 n.4 (4th Cir. 2026) (explaining that parties "waive arguments by failing to brief them").

---

[6] OpenAI does not concede the truth of any of Lowrey's allegations, including those about how OpenAI monitors content on its platform. But those allegations are ultimately irrelevant because, even if true, they constitute neither "making" nor "initiating" calls.

Instead, Lowrey relies entirely on the discredited notion (at 42–43) that the FCC's interpretation is "binding." That argument cannot survive *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025): "In civil enforcement proceedings under the Telephone Consumer Protection Act, are district courts bound by the Federal Communications Commission's interpretation of the Act? *The answer is no*." *Id.* at 149 (emphasis added); *see also Loper Bright*, 603 U.S. at 412 ("*Chevron* is overruled"; "Courts must exercise their independent judgment"). Lowrey's citations (at 43) to pre-*Loper Bright*, pre-*McLaughlin* decisions that reflexively "applied" the FCC's atextual interpretation have no persuasive value.

Lowrey cites only one decision that he says engages with *Loper Bright*—an out-of-circuit district court case that he only references in passing. Opp. to OpenAI MTD 43 (citing *Wilson v. Hard Eight Nutrition LLC*, 804 F. Supp. 3d 1141 (D. Or. 2025)); *but see 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 524 n.6 (4th Cir. 2022) ("A party waives an argument" with a mere "passing shot at the issue."). In any event, that decision is unpersuasive. It leans heavily on statutory "purpose," *Wilson*, 804 F. Supp. 3d at 1150, but "no statute pursues a single policy at all costs," *Advoc. Christ Med. Ctr. v. Kennedy*, 605 U.S. 1, 19 (2025) (cleaned up), and Congress identified the relevant concern here as calls "*to the home*," Pub. L. No. 102-243, § 2(1), 105 Stat. 2394, 2394 (1991) (codified at 47 U.S.C. § 227 note) (emphasis added), not calls to cellular telephones. The decision's textual analysis is no stronger. It claims that because "residential" modifies "subscriber," it is the subscriber that must be in the residence, not the telephone. *Wilson*, 804 F. Supp. at 1149. But the statutory phrase is "residential *telephone* subscriber." 47 U.S.C. § 227(c)(1) (emphasis added). Thus, it is the "telephone" that must be associated with a residence. Finally, the decision's invocation of "deferential review" under *Loper Bright* misreads that decision, *Wilson*, 804 F. Supp. at 1150–51, which preserves deference only

for "factbound determinations," not legal questions about the meaning of statutory terms. *Loper Bright*, 603 U.S. at 388–89.

Finally, Lowrey's demands for discovery (at 45) again miss the point. Lowrey alleges that his "only" phone is his "cellular phone," Am. Compl. ¶¶ 206, 209, and that he "has no landline telephone," *id.* ¶ 208. But if Section 227(c) does not cover cellular telephones, no discovery can cure that legal defect. For this reason alone, Count One must be dismissed.

2. Plaintiff's Brief Confirms He Has Not Plausibly Alleged His Cell Phone Was "Residential."

OpenAI's motion to dismiss also showed (at 33–36) that even if *some* cellular telephones can be residential (they cannot), Lowrey has failed to plausibly allege that *his* cellular telephone is residential because he relies only on "vague" and "conclusory" assertions. Lowrey's response only confirms the pleading defect.

Lowrey points (at 44–45) to two allegations: that he (i) "registered his cell number on the [Do-Not-Call] Registry," and (ii) "uses [his phone] for residential" and "personal" purposes. The latter is a legal conclusion. Merely pleading that one "uses her telephone number for residential purposes … is conclusory and simply states the legal requirement." *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020). And "legal conclusions" cannot "state a claim to relief that is plausible on its face." *Seabrook v. Driscoll*, 148 F.4th 264, 269–70 (4th Cir. 2025) ("pleadings … must contain more than labels and conclusions" (quotations omitted)).

That leaves only one non-conclusory factual allegation: that Lowrey registered his cell phone number on the Do-Not-Call Registry in 2004. Am. Compl. ¶ 206. But, as OpenAI's motion to dismiss explained (at 34), the FCC requires *both* Do-Not-Call registration *and* residential status. *See Stevens-Bratton*, 437 F. Supp. at 658 n.4. Lowrey's compliance with the former does not establish the latter. And indeed, the Do-Not-Call Registry allows for self-registration: *anyone* can

register *any* number, and the Federal Trade Commission does not purport to verify that the number is residential before adding it to the Registry. *See National Do Not Call Registry FAQs*, FTC (Sep. 2023), https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs ("It's free and easy to register yourself at DoNotCall.gov or by calling 1-888-382-1222 from the phone you want to register (TTY: 1-866-290-4236)."; "You'll be able to register up to three numbers at a time online."). At most, registration shows that Lowrey self-identified the number for Registry purposes more than two decades ago. It does not plausibly allege that the number was, in fact, residential when he received the calls at issue.

Further, Lowrey does not plead anything about numerous material facts that govern whether a number is residential. He recites the Ninth Circuit's *Chennette* standard but says nothing about "(1) how [he] hold[s] [his] phone number[ ] out to the public; (2) whether [his] phone[ ] [is] registered with the telephone company as [a] residential or business line[ ]; (3) how much [he] use[s] [his] phone[ ] for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). Without allegations addressing any of those considerations, Lowrey has not pleaded "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Finally, Lowrey again falls back (at 45) on the prospect of "discovery." But because Lowrey has only offered "conclusory statements" and "threadbare recitals of the elements of the cause of action," he cannot "survive a motion to dismiss," and discovery has no role to play. *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026).

### C. Plaintiff's Brief Confirms Counts Nine And Ten Against OpenAI Must Be Dismissed Because Plaintiff Lacks A Cause Of Action.

OpenAI showed (at 36–37) that Lowrey lacks a cause of action to enforce the FCC's business-identification regulation in Count Nine, *see* Am. Compl. ¶ 414 (citing 47 C.F.R. § 64.1200(b)(1)), or the FCC's opt-out regulation in Count Ten, *see id.* ¶¶ 423–28 (citing 47 C.F.R. § 64.1200(b)(3)). Lowrey does not dispute that he lacks a cause of action to enforce either regulation; indeed, he expressly agrees (at 46) that "federal courts have held that Section 227(b) cannot be used to privately enforce Section 64.1200(b) Regulations."

Thus, Lowrey concedes that some of his claims cannot proceed as pleaded and disputes only the scope of the dismissal. He argues (at 45–46) that Counts Nine and Ten also reference 47 U.S.C. § 227(b)(1)(A)(iii) and therefore should not be dismissed in their entirety. But that does not salvage either claim. While Count Nine separately alleges (at ¶ 413) a violation of section 227(b)(1)(A)(iii) (which fails because, *inter alia*, Lowrey did not "make" or "initiate" calls, *see, e.g.*, *supra* Section I.A), Lowrey still indisputably lacks a cause of action for the distinct business-identification claim. *See* Am. Compl. ¶ 414. Count Ten seeks to enforce *only* the opt-out regulation and does not allege a violation of section 227(b)(1)(A)(iii) at all. *See id.* ¶¶ 420–32.

Thus, the business-identification claim in Count Nine (¶ 414) and the entirety of Count Ten (¶¶ 420–32) must be dismissed because all agree Lowrey lacks a cause of action to pursue them.

### D. Plaintiff's Brief Confirms Counts One And Ten Against OpenAI Must Be Dismissed Because Plaintiff Does Not Plausibly Allege A "Telephone Solicitation" Or "Telemarketing."

OpenAI's motion to dismiss also showed (at 37–39) that Counts One and Ten must independently be dismissed because Lowrey failed to plead facts giving rise to a plausible inference that the calls he allegedly received were "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4); 47 C.F.R.

§ 64.1200(f)(13). In particular, OpenAI showed that nobody asked Lowrey to purchase, rent, or invest in anything, either on the initial calls or when Lowrey called back. Lowrey agrees but speculates (at 47) that there must have been a "pretextual marketing purpose"—i.e., even though nobody tried to sell him anything, there was some secret effort to do so.

This kind of "speculat[ion]" that a call devoid of any solicitation is a mere "pretext for solicitation" is "the sort of thing that could be true, but" that lacks "enough plausible facts to get over the Rule 12(b)(6) hurdle." *Perrong v. CMI Mktg. Rsch. Inc.*, 2023 WL 6277299, at *4 (E.D. Pa. Sep. 26, 2023). That is particularly so here because Lowrey alleges that the calls' *only* mechanism to make a sales pitch was a callback number, but, when he called that number, there was no sales pitch. Because Lowrey alleges neither that someone offered to sell him something nor that he was directed to a medium where someone would eventually offer to sell him something, he fails to allege a telemarketing purpose.

Lowrey's cases confirm the point. Every case he cites—to a one—involved allegations that the defendant's communication either directly made a sales pitch,[7] or directed the call recipient to another medium that made a sales pitch.[8] That makes good sense. If a caller's purpose is to sell something, presumably there is a point at which they will *try and sell something*.

---

[7] *See Wilcox v. MarketPro S., Inc.*, 2023 WL 8806696, at *1 (D. Md. Dec. 20, 2023) (alleging messages that expressly offered "to 'buy as-is houses'"); *Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 642 (S.D. Tex. 2023) (alleging "offers to buy homes"); *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 634 (S.D.N.Y. 2025) (alleging offer to "get[ ]" message recipient "pre-approved" for a mortgage and to assist with "home buying"); *Whittaker v. Freeway Ins. Servs. Am., LLC*, 2023 WL 167040, at *1 (D. Ariz. Jan. 12, 2023) (alleging offer "to sav[e] you on your car insurance"); *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *1 (D. Or. July 21, 2025) (alleging offer for "loan"); *Calvin v. Humana Inc.*, 2022 WL 18956206, at *1 (S.D. Fla. Aug. 18, 2022) (alleging offer for "online health and wellness classes" and "$0 copay for in-network providers").

[8] *See Eagle v. GVG Cap., LLC*, 2023 WL 1415615, at *1 (W.D. Mo. Jan. 31, 2023) (alleging "messages directed Plaintiff to … a real estate website" that offered "home selling services"); *Abboud v. Circle K Stores Inc.*, 2025 WL 307039, at *2 (D. Ariz. Jan. 27, 2025) (alleging "text

Lowrey does not cite a single TCPA case that has *ever* survived a motion to dismiss where the plaintiff has not alleged a sales pitch or direction to a medium where there was an eventual sales pitch. This Court should not be the first.

## II. Plaintiff's Brief Confirms He Does Not Plausibly Allege OpenAI Violated The VTPPA.

Lowrey's opposition to OpenAI's motion to dismiss only confirms that the Court should also dismiss Lowrey's VTPPA claims against OpenAI—Counts Three and Six—for four independent reasons. *First*, after dismissing the federal TCPA claims against OpenAI, the Court should decline supplemental jurisdiction over the parallel state-law claims against OpenAI. OpenAI MTD 40. *Second*, Lowrey has failed to plausibly allege that OpenAI "made," "initiated," or "caused to be initiated" calls. *Id.* at 40–41. *Third*, Lowrey has failed to plausibly allege that he received "telephone solicitations." *Id.* at 42. *Fourth*, Lowrey's VTPPA failure-to-identify claim fails because he does not allege that OpenAI ever "made contact" with him. *Id.* at 42–43.

### A. Plaintiff's Brief Confirms The Court Should Decline Supplemental Jurisdiction Over Plaintiff's State-Law Claims.

Lowrey agrees (at 49) that his only potential basis for this Court's jurisdiction over his state-law claims is supplemental jurisdiction. He also does not dispute that the ordinary rule "when a district court dismisses all federal claims in the early stages of litigation" is to "decline to exercise jurisdiction over any remaining pendent state law claims." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024); *see also Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *11–12 (E.D. Va. Nov. 12, 2020) (explaining that court should decline "supplemental jurisdiction" over "VTPPA claim" after dismissing TCPA claim).

---

messages" with a "link" to "receive special offers" or "get offers" for "tobacco products").

Lowrey faults (at 49–50) OpenAI for not explaining why the Court should not "retain jurisdiction" if the federal claims against OpenAI are dismissed. But that gets the burden exactly backwards. "The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *accord Wilkins v. Eng. Constr. Co., Inc.*, 823 F. Supp. 3d 614, 619 (W.D. Va. 2026) (Moon, J.) ("The plaintiff, as the party invoking the court's jurisdiction, bears the burden of establishing it." (citing *Adams*, 697 F.2d at 1219)). If Lowrey thought some special circumstance warranted a departure from the normal rule against retaining jurisdiction upon dismissal of all federal claims, then it was *his* burden to demonstrate that. *Accord Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims").

In any event, the supplemental-jurisdiction considerations strongly favor dismissing the state-law VTPPA claims against OpenAI once the federal claims against OpenAI are gone. After all, Lowrey's VTPPA theory, like his TCPA theory, advances an unprecedented form of liability: that OpenAI should be liable for "making" or "initiating" calls because a third party (allegedly Fresh Start) unsuccessfully tried to use OpenAI's technology during a call. That would be, to put it mildly, a "novel" application of Virginia "statutory law," and so is "best left to the courts of the Commonwealth to resolve." *Palmer v. Va. High Sch. League, Inc.*, 2026 WL 1481944, at *5 (W.D. Va. May 27, 2026); *see also Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010) ("our precedents evince a strong preference that state law issues be left to state courts"). That theory is also entirely different than the legal theories Lowrey advances against OpenAI's

codefendants, so there is no "convenience" or "judicial economy" gained by keeping state-law claims against OpenAI even if federal claims survive against those other parties. *Henderson*, 102 F.4th at 251. And while Lowrey complains that Virginia does not offer a "class-action mechanism," Opp. to OpenAI MTD 50, comity favors respecting the State's judicial policy choices—not supplanting them, *Smith v. Walmart Inc.*, 2024 WL 4819443, at *7 (W.D. Va. Nov. 18, 2024) ("declining to exercise supplemental jurisdiction" where it "would promote comity").

**B. Plaintiff's Brief Confirms He Does Not Plausibly Allege OpenAI "Made," "Initiated," Or "Caused To Be Initiated" Any Calls.**

If the Court reaches Lowrey's VTPPA claims, they too must be dismissed. As OpenAI showed in its motion to dismiss (at 40–41) and Lowrey does not dispute, all of these claims require Lowrey to plead facts showing that OpenAI "made," "initiated," or "caused to be initiated" telephone calls. Lowrey also does not dispute that these terms, just like in the TCPA, mean "to begin" a call by "physically initiat[ing] it." *See* OpenAI MTD 41 (citing cases construing these terms). Thus, just like the TCPA claims, Lowrey's concessions mandate dismissal because his "claim is ***not*** that OpenAI placed the call[s]" to his telephone. Opp. to OpenAI MTD 37 (emphasis added) (quotations omitted); *see supra* Section I.A.

Lowrey's primary response misses the mark. He emphasizes that the VTPPA defines "telephone solicitor" as one "who makes or initiates, or causes another person to make or initiate, a telephone solicitation *on its own behalf or for its own benefit or on behalf of or for the benefit of a seller*." Opp. to OpenAI MTD 50–51 (quoting Va. Code § 59.1-510) (emphasis in original). To be sure, a person can be liable if he makes calls for somebody else. But Lowrey does not allege that the calls were made on OpenAI's behalf or for OpenAI's benefit. He claims the calls were made *for Fresh Start* "to advertise and market *Fresh Start's* services in handling probate matters." Am. Compl. ¶ 251 (emphasis added); *see also id.* ¶ 259 ("Twilio … sent the messages as the agent

of Fresh Start"); Opp. to Fresh Start MTD, ECF No. 62, at 13 n.7 (asserting "call[s] on behalf of FSG"—i.e. Fresh Start—"resulted in the calls … at issue"). Thus, Lowrey must show that OpenAI itself "made," "initiated," or "caused another person to make or initiate" calls, Va. Code § 59.1-510, allegedly on Fresh Start's behalf. For all the reasons explained above, Lowrey has not made that showing because OpenAI does not—and did not—"make," "initiate," or "cause[ ] another person to make or initiate" calls. *See supra* Section I.A; *see also* OpenAI MTD 41 (collecting VTPPA cases dismissing for failure to show that defendant placed calls).[9]

Lowrey's other response recycles his erroneous TCPA arguments about the statutory meaning of "make" and "initiate." He cites (at 51–52) FCC guidance, but that is about the TCPA—not the VTPPA—and, as already explained, the guidance at most applies only to parties that are involved in *placing* calls, not providing a service that others use to generate the *content* for calls. *See supra* Section I.A.1.b. He again asks (at 52) for discovery, but "allowing discovery where Plaintiff has failed to allege a plausible claim [of call initiation] would be directly contrary to the mandates of *Iqbal* and *Twombly*." *Hurley*, 2018 WL 4854082, at *4; *see supra* Section I.A.1.c. Indeed, Lowrey simply ignores the cases where courts have dismissed VTPPA claims, like this one, that fail to plausibly allege that a defendant made, initiated, or caused to be made or initiated calls. *See* OpenAI MTD 41 (collecting cases).

[9] Lowrey's citation to *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019), only reinforces this point. In that case, a third-party firm called SSN allegedly "ma[d]e calls… on behalf of" Dish Network. *Id.* at 650. The Fourth Circuit found Dish vicariously "liable for the calls that SSN made" on its behalf. *Id.* at 659. It explained that the TCPA's private right of action "contemplates that a company can be held liable for calls made on its behalf, even if not placed by the company *directly*." *Ibid.* (emphasis added). In this case, Lowrey alleges that OpenAI is akin to SSN (the party that made the calls) and Fresh Start is akin to Dish (the party on whose behalf the calls were made). Thus, Lowrey must show that OpenAI made the calls "directly." *Ibid*; *accord Hurley*, 2018 WL 4854082, at *6 (rejecting vicarious TCPA liability against Fiverr where "the Complaint cuts in the other direction, alleging [another defendant] 'hired/retained'" Fiverr).

### C. Plaintiff's Brief Confirms He Does Not Plausibly Allege A "Telephone Solicitation."

OpenAI showed in its motion (at 42) that Lowrey failed to plausibly allege that the calls he received were solicitations because, under the VTPPA, a call is not a solicitation if it "d[oes] not offer or advertise any property, goods or services for sale, lease, license or investment." *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 428 (E.D. Va. 2021) (construing Va Code § 59.1-510). Lowrey does not dispute that no one advertised anything to him. Instead, he again claims that the cryptic calls had some secret, undisclosed purpose to advertise to him.

That argument runs into two problems. *First*, as already explained, Lowrey has failed to plausibly allege a pretextual purpose because he does not allege either a sales pitch or a means by which the caller would ever make a sales pitch. *See supra* Section I.D. *Second*, Lowrey does not dispute that under the *VTPPA*, a call's purpose "is determined from *the contents of the … message* relative to its recipient"—not some unbounded "assessment of a sender's broader intent in sending the" communication. *Cavey*, 542 F. Supp. 3d at 427 (emphasis added). Here, "the contents of the" calls Lowrey received contained no advertisements, and so his appeal to an amorphous analysis of the "broader intent" behind the calls fails. *Id.* at 427–28.

### D. Plaintiff's Brief Confirms His Failure-To-Identify Claim Fails Because He Does Not Allege OpenAI "Made Contact" With Him.

OpenAI showed in its motion (at 42–43) that Count Six fails because Lowrey does not allege that OpenAI "*ma[de] contact* with the [call] recipient." Va. Code § 59.1-512 (emphasis added). Lowrey does not dispute that "make contact" means "to *succeed* in communicating with someone." OpenAI MTD 43 (citing dictionary). That compels dismissal of this claim for a simple reason: *OpenAI* never succeeded in communicating with Lowrey because when it allegedly came time for OpenAI's Realtime API to speak, the attempt "failed," and Lowrey heard an error code. *See supra* Section I.A.2.

Lowrey's responses to this straightforward conclusion are unconvincing. *First*, he says (at 53–55, 56–57) the "contact" occurred when the calls played a "prerecorded message" *from Fresh Start*. But OpenAI is not Fresh Start, and Lowrey alleges that when it came time for OpenAI's Realtime API to speak, the "attempt[ ] failed." Am. Compl. ¶ 239 (quoting error code); *see supra* Section I.A.2. Failing to communicate is the opposite of what it means to "make contact."

*Second*, Lowrey argues (at 55) that OpenAI is "jointly and severally liable" under Va. Code § 59.1-514.1 because Fresh Start made contact. Lowrey misreads the statute. That provision makes a "seller" and "a telephone solicitor" jointly and severally liable for "*mak[ing] or initiat[ing]* a telephone solicitation in violation of" the VTPPA. Va. Code § 59.1-514.1(A) (emphasis added). While call initiation is the first required element of Va. Code § 59.1-512, the second requirement is that the solicitor fail to "identify himself." The VTPPA does not provide joint and several liability for failure to identify, and so it does not help Lowrey here.[10]

*Finally*, Lowrey again retreats (at 55) to the prospect of discovery. But if discovery shows that Lowrey's "attempt[ ]" at communicating with OpenAI's Realtime API "failed," as he alleges, Am. Compl. ¶ 239, then he will still lack a claim to relief. Thus, no factfinding will change that he has not "plausibly allege[d] facts that, if proven, would be sufficient to establish each element of [a] claim" under the VTPPA. *Harvey*, 48 F.4th at 268–69.

[10] Further, as already explained, OpenAI cannot be jointly and severally liable for *any* element of *any* VTPPA claim because OpenAI is not (i) a "telephone solicitor," as OpenAI does not "make[ ] or initiate[ ], or cause[ ] another person to make or initiate," telephone calls, Va. Code § 59.1-510; *accord supra* Section II.B; OpenAI MTD 40–41, or (ii) a "seller" because the calls at issue were allegedly made on behalf of Fresh Start in order to sell Fresh Start's services, Va. Code § 59.1-510; *accord supra* Section II.B; OpenAI MTD 12 n.6.

## III. PLAINTIFF'S BRIEF CONFIRMS HIS DO-NOT-CALL TCPA CLAIM AND VTPPA CLAIMS MUST BE DISMISSED BECAUSE OPENAI'S TERMS OF SERVICE PREVENT UNLAWFUL CALLS.

OpenAI showed (at 44–45) that it is entitled to an affirmative defense under the TCPA and VTPPA because OpenAI has employed "reasonable practices and procedures to effectively prevent" unlawful telephone solicitations. 47 U.S.C. § 227(c)(5); Va. Code § 59.1-514(C). These provisions—like the statutes themselves—are an awkward fit here because OpenAI does not make or initiate calls and therefore cannot be liable in the first place. But OpenAI explained that, in the alternative, if the statutes do apply, then it is entitled to their affirmative defense because OpenAI's terms of service prohibit Realtime API users from placing illegal calls. OpenAI cited *Zhu v. DISH Network, LLC*, 808 F. Supp. 2d 815 (E.D. Va. 2011), which held that an agreement requiring downstream contractors "to comply with telemarketing laws" satisfied this affirmative defense. *Id.* at 820.

Lowrey agrees with the key premises. He does not dispute that OpenAI's terms of service are properly before this Court on this motion to dismiss and that they prohibit OpenAI's users from placing illegal calls. Nor does he dispute that *Zhu* was rightly decided on the basis of such a contract. Those concessions confirm that OpenAI is entitled to this "[a]ffirmative defense" on the "Rule 12(b)(6) motion[ ]." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023).

Lowrey's disagreements do not change this conclusion. First, he says (at 57–58) that OpenAI could have adopted even *more* "measures to prevent illegal spam calls from occurring." But that runs right into the teeth of *Zhu*. There too, the plaintiffs argued that defendant Dish should have done more to "exercise[ ] … control or supervision over" third parties "making telemarketing calls." *Zhu*, 808 F. Supp. 2d at 820. The court disagreed. Even if Dish could have done more, the "agreement" alone "constitute[d] a 'reasonable practice and procedure'" and so satisfied the "affirmative defense." *Ibid.* (alterations accepted). Next, Lowrey resorts (at 58) to his well-worn

refrain that he is "entitled to discovery." But again, *Zhu* found—after discovery—that a contract provision prohibiting illegal robocalls was reasonable and so satisfied the affirmative defense. At the pleading stage, Lowrey does not dispute that OpenAI has the same contract provision. Thus, discovery will not change that OpenAI has "reasonable practices and procedures" that satisfy the affirmative defense. 47 U.S.C. § 227(c)(5); Va. Code § 59.1-514(C).

Thus, OpenAI is independently entitled to dismissal on this alternative ground.

## CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that the Court dismiss with prejudice all claims against it.

Dated: July 1, 2026

Respectfully submitted,

*/s/Stephen J. Obermeier*
Stephen J. Obermeier (VSB # 89849)
Michael E. Toner (VSB # 34548)*
Krystal B. Swendsboe (VSB # 89614)
Jeremy J. Broggi (DC Bar # 1029427)*
Boyd Garriott (DC Bar # 1617468)*
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Telephone: (202) 719-7000
Fax: (202) 719-7049
sobermeier@wiley.law
mtoner@wiley.law
kswendsboe@wiley.law
jbroggi@wiley.law
bgarriott@wiley.law

*Counsel for OAI International, Inc.*

* *Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on July 1, 2026, a true and correct copy of the foregoing was filed and served electronically upon counsel of record registered with the Court's CM/ECF system.

*/s/Stephen J. Obermeier*
Stephen J. Obermeier (VSB # 89849)