**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

WILLIAM LOWREY,

Plaintiff,

v.

TWILIO INC., OPENAI, L.L.C., and FRESH START GROUP LLC,

Defendants.

Civil Action No. 6:25-cv-00116-NKM-CKM

# MEMORANDUM IN SUPPORT OF DEFENDANT TWILIO INC.'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL OR, IN THE ALTERNATIVE, FOR RECONSIDERATION


**HOLLAND & KNIGHT LLP**
Brent R. Gary (VSB # 66592)
1650 Tysons Boulevard, Suite 1700
Tysons, VA 22102
Tel: 703.720.8038
brent.gary@hklaw.com

Travis A. Sabalewski (VSB #47368)
200 South 10th Street, Suite 1000
Richmond, VA 23219
Tel: 804.799.6591
travis.sabalewski@hklaw.com

Cory W. Eichhorn (FL Bar # 576761)
Chazz T. Freeman (FL Bar # 1050718)*
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Phone 305.789.7576
cory.eichhorn@hklaw.com
chazz.freeman@hklaw.com

## TABLE OF CONTENTS


**INTRODUCTION** .......... 6

**BACKGROUND** .......... 7

**STANDARD OF REVIEW** .......... 9

**ARGUMENT** .......... 10

- **I. THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL** .......... 10
  - **1. Reversal Would Result in Twilio's Dismissal from This Action** .......... 11
  - **2. The Issue Is a Pure Question of Law** .......... 12
- **B. THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION** .......... 13
  - **1. Courts Addressing Platform Providers Have Regularly Held that They Do Not "Make" or "Initiate" Their Customers' Communications** .......... 14
  - **2. Recent Supreme Court Decisions on Platform Liability Reinforce a Substantial Ground for Disagreement** .......... 16
  - **3. FCC Guidance Further Supports a Substantial Ground for Disagreement** .......... 17
- **C. IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION** .......... 18

**II. ALTERNATIVELY, THE COURT SHOULD RECONSIDER THE ORDER** .......... 19

**CONCLUSION** .......... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003) .......... 10

*Cisco Sys., Inc. v. Doe I*,
146 S. Ct. 1882 (2026) .......... 16

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
609 U.S. 141 (2026) .......... 16

*Frank v. Cannabis & Glass, LLC*,
2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) .......... 14

*Gilmore v. Jones*,
2019 WL 4417490 (W.D. Va. Sept. 16, 2019) (Moon, J.) .......... 10, 11, 12

*Golan v. FreeEats.com, Inc.*,
930 F.3d 950 (8th Cir. 2019) .......... 19

*Guzman v. Acuarius Night Club LLC*,
167 F.4th 217 (4th Cir. 2026) .......... 12

*Hare v. Fam. Publ'ns Serv., Inc.*,
342 F. Supp. 678 (D. Md. 1972) .......... 20

*Hengle v. Asner*,
2020 WL 855970 (E.D. Va. Feb. 20, 2020) .......... 18

*Hutchens v. Cap. One Servs., LLC*,
2020 WL 6121950 (E.D. Va. Oct. 16, 2020) .......... 11, 18

*Int'l Refugee Assistance Project v. Trump*,
404 F. Supp. 3d 946 (D. Md. 2019) .......... 14

*Kauffman v. CallFire, Inc.*,
141 F. Supp. 3d 1044 (S.D. Cal. 2015) .......... 14, 21

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 17

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) .......... 17

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)....................15

*Nautilus Ins. Co. v. Strongwell Corp.*,
968 F. Supp. 2d 807 (W.D. Va. 2013)....................10

*Stephens ex rel. R.E. v. Astrue*,
565 F.3d 131 (4th Cir. 2009)....................12

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
2015 WL 778065 (W.D. Wash. Feb. 24, 2015)....................14, 21

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
30 F.C.C. Rcd. 7961 (2015)....................17

*Selou v. Integrity Sol. Servs. Inc.*,
2016 WL 612756 (E.D. Mich. Feb. 16, 2016)....................14

*Thomas v. Maximus, Inc.*,
2022 WL 1482008 (E.D. Va. May 10, 2022)....................11

*In re Trump*,
928 F.3d 360 (4th Cir. 2019)....................13

*In re Trump*,
928 F.3d at 370–71....................14

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023)....................16

*Westfarm Assocs. Ltd. P'ship v. Int'l Fabricare Inst.*,
846 F. Supp. 422 (D. Md. 1993), *aff'd sub nom.*, 66 F.3d 669 (4th Cir. 1995)....................7

*Zhu v. DISH Network, LLC*,
808 F. Supp. 2d 815 (E.D. Va. 2011)....................14

*Zinski v. Liberty Univ., Inc.*,
2025 WL 1001163 (W.D. Va. Apr. 3, 2025) (Moon, J.)....................10, 14, 18, 19

**Statutes**

28 U.S.C. § 1292(b)....................6, 9, 13

47 U.S.C. § 227(b)(1)....................7, 19

47 U.S.C. § 227(b)(1)(A)(iii)....................11

TCPA....................*passim*

Telephone Consumer Protection Act ........................................................................................6

Va. Code § 59.1-510 ....................................................................................................8, 9, 19

Va. Code §§ 59.1-510, 59.1-513, 59.1-514 .........................................................................11

Virginia Telephone Privacy Protection Act ..........................................................................6

VTPPA ......................................................................................................................... *passim*

VTPPA § 59.1-514(A) ..........................................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 54(b) ............................................................................6, 10

https://help.twilio.com/articles/223181808-Restricted-SMS-message-types-using-Twilio; ............................................................................................................21

https://www.twilio.com/docs/glossary/what-is-telephone-consumer-protection-act-tcpa; ..........................................................................................................21

https://www.twilio.com/en-us ...............................................................................................21

https://www.twilio.com/en-us/legal/service-country-specific-terms/voice-sip ............................21

https://www.twilio.com/en-us/legal/service-country-specific-terms/voice-sip, https://www.twilio.com/en-us .........................................................................................18

*Infra* § I.B...............................................................................................................................6

Rule 12(b)(6)...........................................................................................................................12

Twilio, https://www.twilio.com/docs/messaging/tutorials/how-to-send-sms-messages ..............................................................................................................................8

Twilio Inc. ("Twilio") respectfully moves, under 28 U.S.C. § 1292(b), to certify the Court's October 1, 2026 Order ("Order") (Dkt. 99) for interlocutory appeal or, in the alternative, under Federal Rule of Civil Procedure 54(b) for reconsideration of the Order.

## INTRODUCTION

Twilio respectfully asks the Court to certify the following controlling question of statutory interpretation for interlocutory appeal: does a communications-platform provider "make" or "initiate" a call or text message under the Telephone Consumer Protection Act ("TCPA") and Virginia Telephone Privacy Protection Act ("VTPPA") when, accepting Plaintiff's well-pleaded allegations as true, it simply transmits, to a recipient selected by its customer, a customer-directed communication that its customer initiated and scripted? The Order found the answer was yes, determining that "Twilio's platform can be used to make telemarketing calls" and that "it 'makes' calls for its customers." Order at 10.

There is substantial ground for difference of opinion with that conclusion because multiple district courts have found that a platform provider is not an initiator or maker of a call merely by providing the technology through which a call is placed. *See Infra* § I.B.

Certification under 28 U.S.C. § 1292(b) is warranted to allow the Fourth Circuit to resolve this threshold question of law before the parties undertake potentially unnecessary discovery and class-certification proceedings. Co-defendant OpenAI, L.L.C. ("OpenAI") has already sought certification of a closely related question arising from the same Order, and the two issues can be considered together. Alternatively, Twilio respectfully asks that the Court reconsider its ruling under Rule 54(b) and hold that Twilio did not "make" or "initiate" the telephone calls at issue in the First Amended Complaint ("Amended Complaint").

## **BACKGROUND**[1]

Plaintiff William Lowrey ("Plaintiff") alleges that he received text messages and telephone calls concerning services marketed by Fresh Start Group LLC ("Fresh Start") in violation of the TCPA and VTPPA. As relevant here, the Amended Complaint expressly identifies Fresh Start as the party that initiated those communications. It alleges that the text messages "were initiated by Fresh Start and sent by Twilio through its SMS platform," FAC ¶ 257, and that the calls "were initiated by Fresh Start and actually made by Twilio and OpenAI," *id.* ¶ 264. In the counts against Fresh Start, Plaintiff likewise alleges that Fresh Start "initiated repeated telemarketing texts and calls" and "initiated" the texts without maintaining required do-not-call procedures. *Id.* ¶¶ 388, 390.

The Amended Complaint separately describes OpenAI's role in the calls. According to Plaintiff, "OpenAI initiates the conversation on the call, determines what to say, and interacts with individuals who answer such calls." *Id.* ¶ 144. Plaintiff further alleges that Twilio "cannot make a successful call without OpenAI's involvement as the active caller participant." *Id.* ¶ 146.

In relevant part, Twilio moved to dismiss the TCPA and VTPPA claims on the ground that neither the Amended Complaint nor the Twilio materials incorporated into it plausibly alleged that Twilio "made" or "initiated" the challenged communications. Dkt. 50-1 at 8–22, 29–31. The TCPA prohibits a person from "mak[ing]" or "initiat[ing]" certain calls, 47 U.S.C. § 227(b)(1), while the

---

[1] Citations in this Motion are to Plaintiff's First Amended Complaint, which was the operative pleading at the time the Court entered its October 1, 2026 Order. Plaintiff filed a Second Amended Complaint on October 22, 2026 (Dkt. 106), which did not materially alter the allegations cited or moot the relief sought herein. *Cf. Westfarm Assocs. Ltd. P'ship v. Int'l Fabricare Inst.*, 846 F. Supp. 422, 428 (D. Md. 1993), *aff'd sub nom.*, 66 F.3d 669 (4th Cir. 1995) (determining that filing of amended complaint did not moot earlier-filed interlocutory motion where claims "remain[ed] substantially the same between the first and second amended complaints" and "no prejudice" resulted).

VTPPA similarly defines a "telephone solicitor" as a person "who makes or initiates, or causes another person to make or initiate, a telephone solicitation call," Va. Code § 59.1-510. Twilio therefore argued that the claims presented the same threshold question: whether Twilio's role in allowing its customers to transmit communications through its platform made it a maker or initiator under the statutes.

Twilio's alleged role did not satisfy that standard. According to the Amended Complaint and incorporated Twilio materials, Twilio provides the technology through which its customers transmit communications but does not decide their content, timing, or recipients. Dkt. 50-1 at 8–22; Dkt. 67 at 3–18, 23–24. Twilio's customers have sole control over those decisions. Twilio argued in its Motion to Dismiss that the technical functions it performs were insufficient under the meaning of "make" and "initiate" as well as the FCC's framework vis-à-vis a platform provider, which focuses on an entity's involvement in the particular communication, including its control over the recipient, timing, and content. Dkt. 50-1 at 8–22.

The Court granted Twilio's motion in part but rejected its maker-or-initiator argument. The Court began with the statutory text. Because the TCPA does not define the words "make" or "initiate," the Court applied their ordinary meanings. Order at 8–9. It then rejected Twilio's position, reasoning that Twilio and OpenAI had "divided the traditional functions of a 'telemarketer' or 'robo-caller' between them." *Id.* at 10. To reach this result, the Court relied on the allegations and Twilio's incorporated website materials, emphasizing that Twilio "provides the telephone numbers and dials the unsuspecting consumers." *Id.* But the FAC alleges only that Twilio supplies the *originating* telephone numbers, not the consumer numbers that are dialed. FAC ¶¶ 24–25, 265. Indeed, Twilio's customers are responsible for inputting the recipient phone numbers. *Send SMS and MMS messages*, Twilio,

https://www.twilio.com/docs/messaging/tutorials/how-to-send-sms-messages. Plaintiff does not allege that Twilio has any role in selecting the recipient phone numbers to whom communications are transmitted.

The Court appeared to acknowledge Twilio's argument that it does not make or initiate calls because it exercises no control over message content, timing, or recipients. Order at 10. Yet, the Order summarily concluded that Twilio's and OpenAI's platforms "work *together*" and that the companies, "working in concert," "made" and "initiated" the calls. *Id.* at 10–11. Specifically, the Order found that Twilio was an "initiator" or "maker" of the calls at issue simply because Twilio's marketing materials note that "Twilio's platform can be used to make telemarketing calls." *Id*. at 10. As detailed below, Twilio's website excerpts relied upon by the Court reflect only that Twilio's customers can place calls through the platform—not that Twilio makes the calls itself. In addressing the VTPPA claims, the Court rejected Twilio's corresponding argument that it did not make or initiate the communications because "[t]he Court already rejected these arguments regarding the TCPA." *Id.* at 17. The surviving claims against Twilio therefore turn on whether its alleged role in transmitting the challenged communications makes it a statutory "maker" or "initiator" within the meaning of the TCPA and VTPPA.[2]

## STANDARD OF REVIEW

"28 U.S.C. § 1292(b) provides that a district court may certify a non-final order for interlocutory appeal when the court finds that the order sought for appeal involves (1) a controlling

[2] The Court separately held that the TCPA claim does not extend to text messages. Order at 11–13. But that holding did not dispose of the VTPPA claims based on texts because the VTPPA expressly extends to text messages. Va. Code § 59.1-510. Thus, although only calls remain at issue under the TCPA, whether Twilio "made" or "initiated" the texts and calls remain at issue under the VTPPA. Because the Court resolved the VTPPA maker-or-initiator issue by reference to its TCPA analysis, Order at 17, Twilio addresses both texts and calls here.

question of law (2) about which there is substantial ground for difference of opinion and (3) an immediate appeal therefrom may materially advance the termination of the litigation." *Zinski v. Liberty Univ., Inc.*, 2025 WL 1001163, at *1 (W.D. Va. Apr. 3, 2025) (Moon, J.). "If the district court does not certify its order contemporaneously, the court may amend the order later to include the certification." *Id.* at *3 (citing Fed. R. App. P. 5(a)(3)).

Separately, the Court "retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003); *see also* Fed. R. Civ. P. 54(b). Reconsideration is appropriate where, among other circumstances, "the prior decision was clearly erroneous and would work manifest injustice." *Nautilus Ins. Co. v. Strongwell Corp.*, 968 F. Supp. 2d 807, 823 (W.D. Va. 2013) (internal quotation marks and citation omitted).

## ARGUMENT

### I. The Court Should Certify the Order for Interlocutory Appeal

#### A. The Order Presents a Controlling Question of Law

A question is "controlling" where reversal "would likely result in the dismissal" of a party to the case, "even if it is not completely dispositive to the litigation." *Gilmore v. Jones*, 2019 WL 4417490, at *3 (W.D. Va. Sept. 16, 2019) (Moon, J.). The question must be one "of law." *Id.* at *4.

The Order satisfies this standard. It holds, expressly as to calls and by necessary extension as to the surviving VTPPA text message claims, that Plaintiff sufficiently alleged that Twilio "made" and "initiated" the challenged communications. Order at 10–11, 17. The controlling question is whether, accepting Plaintiff's allegations as true, a communications-platform provider "makes" or "initiates" a communication when it simply provides a platform for a customer to

transmit, at its customer's direction, a telephone call or text message that its customer initiated. That question is controlling because its resolution would determine whether Twilio remains in this case, and it is a pure question of statutory interpretation that the Fourth Circuit can decide on the allegations as pled.

### 1. Reversal Would Result in Twilio's Dismissal from This Action

Every surviving claim against Twilio depends on the Order's conclusion that Twilio "made" or "initiated" the challenged communications. Count 9 arises under 47 U.S.C. § 227(b)(1)(A)(iii), which prohibits a person from "mak[ing] any call" using an artificial or prerecorded voice. Counts 3, 4, and 5 arise under the VTPPA, which likewise predicates liability on a "telephone solicitor," defined as a person "who makes or initiates, or causes another person to make or initiate, a telephone solicitation call." Va. Code §§ 59.1-510, 59.1-513, 59.1-514.

Although the Court did not separately analyze whether Twilio "made" or "initiated" text messages or telephone calls for purposes of the VTPPA, it resolved the VTPPA claims expressly by reference to its TCPA ruling. It rejected Twilio's argument that it "did not initiate or make any calls" because "[t]he Court already rejected these arguments regarding the TCPA." Order at 17. Thus, if the Fourth Circuit holds that Twilio does not "make" or "initiate" communications in the circumstances alleged, every remaining claim against Twilio fails and Twilio would be dismissed from the case. *See Gilmore*, 2019 WL 4417490, at *3; *see also Thomas v. Maximus, Inc.*, 2022 WL 1482008, at *4 (E.D. Va. May 10, 2022) (certifying a question that would "materially affect the case's outcome"); *Hutchens v. Cap. One Servs., LLC*, 2020 WL 6121950, at *5 (E.D. Va. Oct. 16, 2020).

### 2. The Issue Is a Pure Question of Law

An appeal would also turn on a "pure question of law." *Gilmore*, 2019 WL 4417490, at *4 (internal quotation marks and citation omitted). A "ruling under Rule 12(b)(6) presents a pure question of law" because it proceeds on "the assumption that the facts alleged in [the operative complaint] are true." *Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 221 (4th Cir. 2026). Moreover, statutory interpretation presents "a quintessential question of law." *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009).

The Fourth Circuit can resolve the proposed question on the allegations and incorporated materials alone. Plaintiff's own pleading identifies who began the communications at issue. He alleges that "[t]he aforementioned texts that were sent to Mr. Lowrey were initiated by Fresh Start and sent by Twilio through its SMS platform." FAC ¶ 257. He alleges that "the aforementioned calls Mr. Lowrey received were initiated by Fresh Start and actually made by Twilio and OpenAI." *Id.* ¶ 264. And in separate counts, he charges Fresh Start with "initiating" those very texts and calls. *Id.* ¶¶ 387–407. As to the calls, Plaintiff further alleges that "OpenAI initiates the conversation on the call, determines what to say, and interacts with individuals who answer such calls," *id.* ¶ 144, and that Twilio "cannot make a successful call without OpenAI's involvement as the active caller participant," *id.* ¶ 146. Plaintiff never alleges that Twilio itself initiated the challenged calls; it is clear from the FAC that this decision was Fresh Start's alone.

Against those allegations, Plaintiff points to general features of Twilio's platform. He alleges that Twilio queues and processes messages for transmission, *id.* ¶¶ 51–57; displays sending numbers drawn from a customer's registered numbers, *id.* ¶¶ 24–25; segments and formats messages, *id.* ¶¶ 44–50, 250; applies compliance filtering and enforces its acceptable-use policies, *id.* ¶¶ 26–38; and honors recipients' opt-out requests, *id.* ¶¶ 58–59. He also alleges that Twilio

supplies its customers with telephone numbers and infrastructure that customers may, by engineering their own systems, integrate with OpenAI's technology to automate calls. *Id.* ¶¶ 144, 152. Those allegations rest largely on Twilio webpages that the Amended Complaint incorporates by reference and that the Court considered in ruling on the motion. *See* Order at 10.

On that record, the Court concluded that Twilio "provides the telephone numbers and dials the unsuspecting consumers." Order at 10. The Court reasoned that Twilio and OpenAI had "divided the traditional functions of a 'telemarketer' or 'robo-caller' between them." *Id.* And because their platforms allegedly "work *together*," the Court held that the two companies, "working in concert," "made" and "initiated" the calls. *Id.* at 10–11.

The question for appeal is therefore whether Plaintiff's well-pleaded allegations, read together with the materials he incorporates, establish that Twilio "made" or "initiated" the communications. The Fourth Circuit need not resolve any factual dispute or consider any evidence beyond the pleadings and incorporated materials; it need only decide whether the assumed facts establish that Twilio "made" or "initiated" the communications within the meaning of the TCPA and VTPPA. That is a question of statutory interpretation and a pure question of law under § 1292(b).

**B. There Are Substantial Grounds for Difference of Opinion**

"A substantial ground for difference of opinion exists *where reasonable jurists might disagree* on an issue's resolution." *In re Trump*, 928 F.3d 360, 371 (4th Cir. 2019), *on reh'g en banc*, 958 F.3d 274 (4th Cir. 2020), *cert. granted, judgment vacated on other grounds sub nom.*, 592 U.S. 1233 (2021) (quoting *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)) (emphasis in original). "[A] substantial ground for difference of opinion may exist if there is a novel and difficult issue of first impression, or if there is a circuit split and the controlling circuit

has not commented on the conflicting issue." *Zinski*, 2025 WL 1001163, at *2 (internal quotation marks and citations omitted). Disagreement with other district courts may likewise constitute a substantial ground for difference of opinion. *See In re Trump*, 928 F.3d at 370–71 (considering contrary ruling by another district court as demonstrating substantial ground for disagreement); *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 952 (D. Md. 2019) (noting disagreement of "other district courts" in certifying interlocutory appeal).

### 1. Courts Addressing Platform Providers Have Regularly Held that They Do Not "Make" or "Initiate" Their Customers' Communications

Courts have repeatedly held that a platform provider, such as Twilio, does not "make" or "initiate" its customers' communications merely by supplying the technology through which those communications are transmitted. *See, e.g.*, *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1048 (S.D. Cal. 2015) (holding carrier was not liable under TCPA where it "required its users to take affirmative steps to determine whether, when, and to whom they would send text messages" and did not draft content of messages); *Rinky Dink, Inc. v. Elec. Merch. Sys.*, 2015 WL 778065, at *7 (W.D. Wash. Feb. 24, 2015) (holding carrier did not "fall within the scope of the TCPA" where it "was not involved in [the customer's] message transmission to a 'high degree,' and did not have actual knowledge of the [customer] calls"); *Zhu v. DISH Network, LLC*, 808 F. Supp. 2d 815, 818 (E.D. Va. 2011) (rejecting VTPPA § 59.1-514(A) claim against defendant for communications sent by third parties and reasoning that imposing such liability would improperly create a "strict liability" regime found nowhere in the statute); *Selou v. Integrity Sol. Servs. Inc.*, 2016 WL 612756, at *4 (E.D. Mich. Feb. 16, 2016) (dismissing TCPA claims against platform provider defendant who was alleged to be "directly liable for enabling the Defendants' collection calls to plaintiff" and whose "technology made the calls" and holding provider "is not considered the maker or initiator of the calls under the TCPA"); *Frank v. Cannabis & Glass, LLC*, 2019 WL

4855378, at *3 (E.D. Wash. Oct. 1, 2019) (dismissing where complaint did not plausibly allege that defendant, a software platform provider, "controlled the recipients, timing or content" of the communications that were sent using its platform); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *4 (N.D. Cal. Mar. 28, 2018).

The Order took a materially different approach. It stated that Twilio "provides the telephone numbers" from which Twilio's customers' messages and calls are sent "and dials the unsuspecting consumers," such that Twilio and OpenAI had "divided the traditional functions of a 'telemarketer' or 'robo-caller' between them." Order at 10. On that basis—and without referencing any well-pled allegations that Twilio determined, or was involved in decisions relating to the content, timing, or recipients of any of the calls or texts at issue—the Order concluded that Twilio and OpenAI, "*together*" and "working in concert," both "made" and "initiated" the calls. *Id.* at 10–11 (emphasis in original). It also found that Twilio was a "maker" of the calls at issue because it "admit[s] that Twilio's platform can be used to make telemarketing calls." *Id.* at 10.

The Order's conclusion not only ignores the fact that Twilio does *not* determine the content of any calls or texts or to whom they will be sent or made, but the Order's conclusion establishes a substantial ground for difference of opinion with a number of district court decisions. For example, in *Meeks v. Buffalo Wild Wings*, a district court dismissed with prejudice a plaintiff's claim that Yelp was an initiator of the text messages sent because the app users, and not Yelp, "decided whether, when, and to whom to send the text messages." 2018 WL 1524067, at *4. *Meeks* also found that the complaint, as here, contained affirmative allegations "confirming that Yelp was *not* the maker or initiator of the text messages." *Id.* at *5 (emphasis in original). These factors analyzed in *Meeks* and the other district court decisions set forth above strongly weigh in favor of

a determination that Twilio is not a maker or initiator of the calls in question. *See* FAC ¶¶ 257, 264.

The Order's difference in approach, against a body of decisions declining to treat platform providers as makers or initiators based on their role in passively transmitting customer-directed communications, establishes a substantial ground for difference of opinion over the reach of the statutory terms themselves.

**2. Recent Supreme Court Decisions on Platform Liability Reinforce a Substantial Ground for Disagreement**

Several recent Supreme Court decisions have likewise declined to impose liability on technology providers based on third parties' unlawful use of their generally available services. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 499 (2023) (rejecting liability based on social media companies' knowing provision of widely available platforms that third parties used for unlawful ends); *Cox Commc'ns, Inc. v. Sony Music Ent.*, 609 U.S. 141, 149–50, 156–57 (2026) (rejecting liability based on an Internet service provider's continued provision of Internet access to known infringers); *Cisco Sys., Inc. v. Doe I*, 146 S. Ct. 1882, 1888, 1892 (2026) (rejecting liability against technology company based on a third party's allegedly unlawful use of its technology).

The Supreme Court's decision in *Taamneh* is particularly relevant here, as it explained that communications providers would not "normally be described as aiding and abetting, for example, illegal drug deals brokered over cell phones—even if the provider's conference-call or video-call features made the sale easier." 598 U.S. at 499. The same reasoning bears directly on Twilio's alleged role: a communications provider does not become responsible for a customer's conduct merely because its platform provides the technological means through which that conduct occurs. Here, Fresh Start allegedly initiated the offending communications and used Twilio's platform to

transmit them. FAC ¶¶ 257, 264. That Twilio's technology facilitated those communications upon receipt of instructions from Fresh Start does not make Twilio their statutory "maker" or "initiator."

### 3. FCC Guidance Further Supports a Substantial Ground for Disagreement

FCC guidance provides another basis for reasonable disagreement over whether Twilio "made" or "initiated" the communications at issue. The FCC has explained that "'initiate' suggests some 'direct connection between a person or entity and the making of a call'" and that the inquiry turns on whether the entity "tak[es] the steps necessary to physically place a telephone call" or is "'so involved in the placing of a specific telephone call' as to be deemed to have initiated it." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7980 ¶¶ 29–30 (2015) (quoting *In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 ¶¶ 26–27 (2013)). But the FCC did not treat a platform's technological role in transmitting a communication as dispositive. Rather, it found that a platform provider was not the maker or initiator where it "does not control the recipients, timing, or content" of the messages, and emphasized the "reactive and tailored nature" of the service. *Id.* at 7982 ¶¶ 32–33.[3]

Those considerations apply here because Plaintiff alleges that Fresh Start initiated the communications, while Twilio's platform merely transmitted them at Fresh Start's request. Dkt. 50-1 at 11–21. The Order instead emphasized that Twilio "provides the telephone numbers and dials the unsuspecting consumers" and combined Twilio's role with OpenAI's in concluding that the two companies, "working in concert," made and initiated the calls. Order at 10–11. At minimum, the FCC's treatment of platforms that technologically facilitate communications initiated by third parties illustrates the substantial ground to disagree over whether Twilio's alleged

[3] Although no longer binding after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the FCC guidance nonetheless shows that reasonable legal minds have treated platform facilitation as materially different from initiation.

role crosses the line from transmitting a customer-directed communication to "making" or "initiating" it. This is especially true given that Plaintiff alleges only that Twilio supplies the telephone numbers *from* which the calls are made, not the numbers *to* which the calls are made. FAC ¶¶ 24–25, 265. Plaintiff does not allege that Twilio decided whom to message or when (aside from queuing the messages for deliverability). Likewise, the excerpts that the Order cited from Twilio's website reflect that Twilio's *customers* are able to make calls on the platform—not that Twilio makes calls itself. *See* https://www.twilio.com/en-us/legal/service-country-specific-terms/voice-sip, https://www.twilio.com/en-us (cited in Order at 10). This, too, demonstrates substantial ground for disagreement over whether Twilio "made" or "initiated" the communications that Plaintiff alleges.

### C. Immediate Appeal Would Materially Advance the Termination of the Litigation

Certification of a question to the Court of Appeals "materially advance[s] the ultimate termination of the litigation" where it "promote[s] efficiency" and "might avoid protracted and expensive litigation." *Zinski*, 2025 WL 1001163, at *3 (internal quotation marks and citations omitted) (emphasis removed). Thus, certification is appropriate where an appeal would "allow the Parties to define the contours of the litigation," *Hutchens*, 2020 WL 6121950, at *6, or "resolve once and for all" a key threshold issue. *Hengle v. Asner*, 2020 WL 855970, at *10 (E.D. Va. Feb. 20, 2020).

That standard is readily satisfied here. As explained above, reversal would dispose of every remaining claim against Twilio and remove it from this action. *See supra* § I.A. No amendment that continues to premise liability on Twilio's role as a communications platform would alter that result. Resolving that threshold question now would therefore avoid potentially unnecessary discovery, class-certification proceedings, and other pretrial litigation concerning Twilio. Thus,

"[i]t is a near certainty that [Twilio and the Court] would be saved from significant pre-trial effort and expense if the Fourth Circuit were to reverse." *Zinski*, 2025 WL 1001163, at *6. And because OpenAI has already sought certification of a closely related maker-and-initiator issue, *see* Dkt. 103, certifying Twilio's question would permit the Fourth Circuit to consider together the related issues that the Order itself resolved together. The Order concluded that Twilio and OpenAI were "working in concert" in finding that both "made" and "initiated" the calls. Order at 11. An immediate appeal would thus define the scope of this litigation before potentially unnecessary proceedings occur and materially advance its ultimate termination.

## II. Alternatively, the Court Should Reconsider the Order

Twilio respectfully asks the Court to reconsider one aspect of the Order: its conclusion that Twilio and OpenAI, "working in concert," "made" and "initiated" the challenged calls. Order at 10–11.

The TCPA imposes direct liability on the "person" who "make[s]" or "initiate[s]" a call. 47 U.S.C. § 227(b)(1). The VTPPA similarly reaches a person "who makes or initiates, or causes another person to make or initiate, a telephone solicitation." Va. Code § 59.1-510. Both statutes therefore ask whether the particular defendant engaged in the conduct described by the statutory terms.

The Order recognized that direct TCPA liability "generally does not extend to sellers who do not personally make the phone calls at issue," while vicarious liability may arise under common law agency principles. Order at 9 (quoting *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 (8th Cir. 2019)). But *Golan* cautioned against "blur[ring] the line between direct and agency liability" in a way that "would stretch the liability imposed by the TCPA beyond the bounds of those who 'initiate' the phone call." 930 F.3d at 960–61. The Order nevertheless combined the conduct of

separate defendants to find direct liability: it reasoned that on the record before the Court, Twilio and OpenAI had "divided the traditional functions of a 'telemarketer' or 'robo-caller' between them" and, because their platforms "work *together*," concluded that both companies, "working in concert," "made" and "initiated" the calls. Order at 10–11.[4] But the statutes require consideration of whether Plaintiff alleged that *Twilio itself* made or initiated a call, not whether multiple providers collectively performed those functions.

Plaintiff's allegations underscore the distinction. He alleges that the texts "were initiated by Fresh Start and sent by Twilio through its SMS platform," FAC ¶ 257, and that the calls "were initiated by Fresh Start and actually made by Twilio and OpenAI," *id.* ¶ 264. As to the calls, he further alleges that "OpenAI initiates the conversation," "determines what to say," and "interacts" with recipients, while Twilio "cannot make a successful call without OpenAI's involvement as the active caller participant." *Id.* ¶¶ 144, 146. Those allegations do not permit OpenAI's conduct (or Fresh Start's) to be attributed to Twilio simply because Twilio and OpenAI are technologically compatible and execute Fresh Start's instructions.

Considered separately, Twilio's alleged conduct does not satisfy the ordinary meanings the Order adopted. Plaintiff attributes various technical functions to Twilio, including number selection, queuing, formatting, filtering, and transmission, but alleges that Fresh Start initiated the communications. *Id.* ¶¶ 24–59, 257–58, 264. Twilio's incorporated materials likewise show that its platform executes customer instructions, not that it initiates communications on its own or that it is involved in its customers' decisions about what to send and when. *See* Dkt. 50-1 at 11–21;

---

[4] Nor would agency principles permit OpenAI's conduct to be attributed to Twilio. "While an agent is liable for *his own* tortious acts committed in the performance of his agency, he is not liable for the acts of other agents of his principal." *Hare v. Fam. Publ'ns Serv., Inc.*, 342 F. Supp. 678, 682 (D. Md. 1972) (citations omitted) (emphasis in original).

Dkt. 67 at 3–12. The FAC has no well-pleaded allegations that Twilio decided to contact Plaintiff, selected him as a recipient, or determined when or what Fresh Start would communicate to Plaintiff. Nor did Plaintiff's allegations regarding Twilio's ability to work with OpenAI on a programmatic basis address these matters. As explained above, courts applying the TCPA to similar platform providers have repeatedly declined to treat passive technological functions as "making" or "initiating" customers' communications. *See supra* § I.B.1.

The Order similarly erred in treating two excerpts from Twilio's website as admissions that Twilio "makes" calls. The Order first cited Twilio's Voice Services Policy webpage[5], which the Court characterizes as "admitting that Twilio's platform can be used to make telemarketing calls." Order at 10. But the possibility that Twilio can be used *by* third-party telemarketers who decide what numbers to dial, when to dial them, and what to say does not transform it into the "maker" of the calls, just as telephone service providers do not "make" or "initiate" calls simply by virtue of their networks being used. *Kauffman*, 141 F. Supp. 3d at 1048; *Rinky Dink*, 2015 WL 778065, at *7. Likewise, the Order cited Twilio's website home page[6], which the Court found "admits that [Twilio] 'makes' calls for its customers." Order at 10. But Twilio's website does not say this. Rather, it presents "make calls" as something that *its customers* can use its platform to do. As Twilio's website cautions, Twilio's customers—who are responsible for deciding to whom to transmit calls and messages—must ensure their contact lists comply with opt-out and consent requirements. *See* https://www.twilio.com/docs/glossary/what-is-telephone-consumer-protection-act-tcpa; FAC ¶ 20 (citing same); https://help.twilio.com/articles/223181808-Restricted-SMS-message-types-using-Twilio; FAC ¶ 31 (citing same).

[5] https://www.twilio.com/en-us/legal/service-country-specific-terms/voice-sip.
[6] https://www.twilio.com/en-us.

The error is even clearer as to the text messages. The Order's "working in concert" rationale rests on Twilio's and OpenAI's combined functions in making the calls, not text messages. *See* Order at 10 (reciting allegation that "Twilio's and OpenAI's platforms work *together* to place the *calls*" (second emphasis added)); *id.* at 11 (stating that FAC sufficiently alleges that "Twilio and OpenAI—working in concert—'made' and 'initiated' *calls*" (emphasis added)). But Plaintiff alleges that Fresh Start initiated the texts and Twilio transmitted them, FAC ¶ 257, without alleging that OpenAI participated in those communications. Thus, whatever force the Order's combined-functions rationale may have as to the calls, it does not supply a basis for treating Twilio as the maker or initiator of any text messages.

Leaving that reasoning in place would also materially expand direct liability. The Order's reasoning would extend direct liability well beyond the parties that decide to initiate communications. Every call and text necessarily relies on providers that supply numbers, route traffic, queue requests, or transmit content. If those technical functions, alone or combined with another provider's functions, make each provider a direct "maker" or "initiator," the statutory distinction between initiating a communication and providing the infrastructure through which it passes largely disappears. And treating Twilio's campaign registration, message filtering, acceptable-use policies, and opt-out functionality as evidence of "control" creates a perverse incentive: the more a provider does to prevent unlawful communications, the more it would risk direct liability for those communications. *See* FAC ¶¶ 20–38, 58.

Because the VTPPA ruling followed the Court's TCPA analysis, Order at 17, the Court should reconsider its Order, hold that Twilio did not "make" or "initiate" any of the challenged communications, and dismiss the remaining claims against Twilio with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Twilio Inc. respectfully requests that the Court certify the Order for interlocutory appeal or, alternatively, reconsider it and dismiss all remaining claims against Twilio.

Dated: October 30, 2026

Respectfully submitted,

/s/ *Brent Gary*


**HOLLAND & KNIGHT LLP**
Brent R. Gary (VSB # 66592)
1650 Tysons Boulevard, Suite 1700
Tysons, VA 22102
Tel: 703.720.8038
Fax: 703.720.8610
brent.gary@hklaw.com

Travis A. Sabalewski (VSB #47368)
Justin M. Sizemore (VSB #71859)
200 South 10th Street, Suite 1000
Richmond, VA 23219
Tel: 804.799.6591
Fax: 804.500.5353
travis.sabalewski@hklaw.com
justin.sizemore@hklaw.com

Cory W. Eichhorn (FL Bar # 576761)
Chazz T. Freeman (FL Bar # 1050718)*
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Phone 305.789.7576
Fax 305.789.7799
cory.eichhorn@hklaw.com
chazz.freeman@hklaw.com

*Counsel for Twilio Inc.*


* *Pro hac vice application forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, this document was filed with and served upon counsel for the parties through the Court's CM/ECF system.

/s/ *Brent Gary*

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

Generative artificial intelligence was used in the preparation of this filing. The undersigned certifies that all factual assertions, legal authority, and citations have been independently reviewed and verified for accuracy and accepts full responsibility for the contents of this filing.

/s/ *Brent Gary*